JOSEPH KULA ET AL., APPELLEES, v. RICHARD KULA ET AL., APPELLANTS.

31 N. W. 2d 96

Filed February 25, 1948. No. 32297.

*Walter & Flory,* for appellants.

*Wagner & Wagner,* for appellees.

Heard before SIMMONS, C. J., PAINE, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ., and LANDIS, District Judge.

WENKE, J.

This action was brought in the district court for Platte County for the purpose of having three deeds declared void; title to the lands therein described quieted and confirmed in the heirs of Stanislaus Kula, deceased, the grantor; and a partition thereof. It also asks that an accounting of the rents and profits therefrom be made to the legal representative of the grantor's estate.

The trial court found that the three deeds had never been delivered by the grantor and were therefore void; that the will of grantor, Stanislaus Kula, made no disposition of his real estate and that he died intestate with reference thereto; and that the executrix of the estate of Stanislaus Kula, deceased, had a lien on said real estate for costs of administration and the claims filed and allowed against the estate.

It decreed the deeds to be void; determined the interests of the parties in the real estate and quieted and confirmed their title therein, except as to the rights of the executrix of the estate of Stanislaus Kula, deceased; and decreed partition of the real estate. The court deferred the question of an accounting of the rentals until the issue as to the ownership of the real estate had been finally determined.

After the entry of this decree the defendants Richard

Kula and Eleanor Kula filed a motion for new trial and from the overruling thereof they appeal.

The three deeds involved in this litigation are as follows:

The first, executed on December 24, 1943, is from Stanislaus Kula, unmarried, to his son Richard Kula and covers the south half of the southeast quarter, the northwest quarter of the southeast quarter, and the southwest quarter of the northeast quarter, less the road now thereon, of Section 8, Township 17 North, Range 1 West, of the 6th P. M., in Platte County, Nebraska. It was recorded in the office of the Register of Deeds of Platte County on the 19th day of February, 1944, in Book 85 of Deeds at page 670.

The second, executed on April 24, 1940, is from Stanislaus Kula, unmarried, to his daughter Caroline Kula and covers the east 10 acres of the west 20 acres of the north half of the northeast quarter, less the railroad right-of-way, of Section 8, Township 17 North, Range 1 West, of the 6th P. M., in Platte County, Nebraska. This deed was recorded in the office of the Register of Deeds of Platte County on the 23rd day of February, 1944, and recorded in Book 85 of Deeds at page 693.

The third, executed on April 24, 1940, is from Stanislaus Kula, unmarried, to his daughter Eleanore Kula and covers the west 10 acres, less the railroad right-of-way, of the north half of the northeast quarter of Section 8, Township 17 North, Range 1 West, of the 6th P. M., in Platte County, Nebraska. This deed was recorded in the office of the Register of Deeds of Platte County on the 23rd day of February, 1944, in Book 85 of Deeds at page 694.

All three of these deeds were either delivered to the grantees and recorded or recorded after the death of the grantor. Before this action was tried Caroline Kula La Porte conveyed to Eleanor Kula whatever interest she had in the 10 acres described in the deed to her

and the court decreed the interests of these parties accordingly.

The record shows that Stanislaus Kula was an elderly man and, during the period of time herein involved, unmarried. He had been married twice. To the first marriage two children were born. They are Joseph Kula, a son, age 56, and Thomas Kula, a son, age 61. To the second marriage the following children were born who survived him, to wit: Stanley A. Kula, a son, age 37; Eleanor Kula, a daughter, age 35; Caroline La Porte (nee Kula), a daughter, age 33; Wallace T. Kula, a son, age 28; and Richard Kula, a son, age 25. It appears that one son had died prior to the death of the father but left no heirs surviving. The above are all the heirs at law of Stanislaus Kula.

On December 24, 1943, Stanislaus Kula executed the deed, already referred to, to Richard and then placed it, and the other two deeds herein referred to and which he had executed on April 24, 1940, in an envelope and deposited it with the firm of Becher, Hockenberger & Chambers Company in their offices in Columbus, Nebraska.

This envelope had endorsed thereon, over the signature of the grantor, the following:

"Columbus, Nebraska
December 24, 1943.

I hereby direct Becher, Hockenberger and Chambers Company to deliver the within deeds to my children, viz: Richard Kula, Eleanore Kula and Caroline Kula, and to my grand-daughter Lorene Kula, at the date of my death.

I hereby reserve the right to withdraw any and all of within deeds at any time during my lifetime."

This envelope contained four deeds covering all of the real property of the grantor, being 180 acres of land described in the three deeds as hereinbefore set forth and a small residence covered by a deed to a grand-daughter, Lorene Kula. However, Lorene Kula has not

been made a party to this suit and the deed to her is not involved in this litigation.

Thereafter, on December 26, 1943, the grantor made his last will and testament. It was allowed and admitted to probate by the county court of Platte County on April 6, 1944, the testator having died in February 1944. This will made no disposition of the testator's real estate and with reference thereto he died intestate.

It does contain the following provision: "THIRD: It is my sincere wish, desire and intention that my sons, namely, Thomas Kula, Joseph Kula and Richard Kula, receive nothing under this my Last Will and Testament, for the reason that they have received their proportionate share of my property during my life time."

However, this provision does not prevent these three sons from inheriting for, as stated in 18 C. J., Descent and Distribution, § 76, p. 843: "The fact that a will expresses the intention of the testator to disinherit certain persons does not prevent such persons from sharing as heirs at law or next of kin in property as to which the testator died intestate." See, also, 69 C. J., Wills, § 1149, p. 101, and Zimmerman v. Hafer, 81 Md. 347, 32 A. 316.

With reference to the effect of the endorsement placed upon the envelope containing these deeds we approved in Huenink v. Heitbrink, 104 Neb. 520, 177 N. W. 796, the following from Paxton v. State, 59 Neb. 460, 81 N. W. 383: "An instrument is not delivered until it has passed beyond the dominion, control and authority of the maker, and is no longer capable of being recalled." See, also, Wheeler v. Brady, 126 Neb. 297, 253 N. W. 338; 10 R. C. L., Escrow, § 8, p. 626.

As stated in 16 Am. Jur., Deeds, § 110, p. 499: "In other words, the delivery of a deed in the law of conveyancing is a transfer of it from the grantor to the grantee or his agent or to some third person for the grantee's use in such manner as to deprive the grantor of the right to recall it at his option and with intent to convey title." Then going on to say in section 130, page

512: "* * * and if the deed remains within the grantor's control and liable to be recalled, there is, according to almost unanimous authority, no delivery, notwithstanding he has parted with its immediate possession."

However, the defendants Richard Kula and Eleanor Kula and appellants herein, asked that the endorsement placed on the envelope as of December 24, 1943, be reformed to express the true intent and instructions of the grantor by striking therefrom the words: "I hereby reserve the right to withdraw any and all of the within deeds at any time during my lifetime." It is the appellants' contention that the court, based upon the evidence in the record, erred in failing to do so.

It is, of course, true that a court of equity has the power to reform an instrument to conform with the intention of the grantor and to correct a mistake of the scrivener. Pinkham v. Pinkham, 60 Neb. 600, 83 N. W. 837.

However, as stated in Sutherland State Bank v. Dial, 103 Neb. 136, 170 N. W. 666, and approved in Wheeler v. Brady, *supra*: "In order to warrant the reformation of a written instrument in any material respect, the evidence must be clear, convincing and satisfactory, and until overcome by such proof, the terms of the instrument must stand as evidencing the intention of the parties."

From the evidence of George Rambour, Jr., vice president of Becher, Hockenberger & Chambers Company, who had been with the company for 18 years, and that of Mable Swift, an employee thereof for 31 years, it appears that the company had for many years, up until shortly after the death of Stanislaus Kula, placed the same or similar endorsements on many envelopes used for the same purpose. They testified it had become a habit or custom for them to do so. It appears that shortly after the death of Stanislaus Kula they quit doing so and, at that time, advised all of their customers, who had deposited deeds under like endorse-

ments, of the effect thereof. This was done in order to give their customers an opportunity to make a change therein if they so desired.

While Rambour, who handled this transaction with the grantor and who caused the endorsement to be typed on the envelope, did testify that the grantor gave him no directions or instructions with reference to his right to withdraw the deeds and that he caused the endorsement relating thereto to be placed thereon, however, as a whole, his evidence relating to what took place at that time is neither very convincing nor satisfying. He seems very uncertain and at times quite without memory as to just what was said or done at that time.

Appellants call attention to paragraph "Third" of the testator's will, which has hereinbefore been set forth, as indicative of the grantor's intent. Also they call attention to the testimony of the son, Wallace T. Kula, who had visited the father sometime during January or the fore part of February 1944. He testified that at that time the father told him that he had deeded the farm to Richard, that is, the main part of it; that he had deeded 10 acres to Caroline and 10 acres to Eleanor; that the deeds were at Becher, Hockenberger & Chambers Company and that all he had to do was tell the boys and for him to write Richard; and that in case he passed away to take them down to the courthouse and have them registered but that he did not want them registered while he was alive.

It may be that the grantor thought he could give these children his real estate in this manner, that is, by retaining control of the deeds during his lifetime and that he had in fact done so. But if such is true, and he was of that impression, a court of equity cannot now correct his error and give legal effect to deeds that were never delivered during his lifetime for the record fully establishes that he intended to keep control

thereof and retain the right to withdraw them at any time.

That the grantor so intended and understood the endorsement is fully evidenced by a similar deposit of six deeds covering this property made with the same company on April 24, 1940. At that time the envelope in which the deeds were deposited had endorsed thereon the following:

"Columbus, Nebraska.
April 24, 1940.

Becher, Hockenberger & Chambers Co.,
Columbus, Nebraska:

You are hereby directed and authorized to deliver the six within deeds to my children, viz: Stanley, Wallace, Michael, Richard, Eleanore and Caroline, at the date of my death.

I reserve the right to withdraw any or all of the within deeds at any time during my lifetime.

Stanislaus Kula"

It will be observed that the paragraph in question is the same in both endorsements.

Thereafter, on March 4, 1943, the grantor withdrew all six deeds as evidenced by the following endorsement thereon: "Received the within papers March 4, 1943 Stanislaus Kula."

Thus it clearly shows that the grantor not only understood he retained this right but fully exercised it for only two of these deeds, the ones to Eleanor and Caroline, were redeposited on December 24, 1943. What happened to the other four, that is, the deeds to Stanley, Wallace, Michael, and Richard, the record does not disclose.

From what has been said we have come to the conclusion that these deeds were never delivered in the lifetime of the grantor, were testamentary in character, and void. Consequently, the decree of the trial court is affirmed.

AFFIRMED.