WILLIAM CAIN ET AL., APPELLANTS, V. EMILY KILLIAN, APPELLEE.

54 N.W. 2d 368

Filed July 18, 1952. No. 33160.

· *John F. Kerrigan,* for appellants.

*Haggart & Haggart,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, and BOSLAUGH, JJ.

SIMMONS, C. J.

This is an action to set aside a deed; to quiet title to land as against the cloud of a deed; and to secure an accounting of rents and profits. The trial court found for defendant. Plaintiffs appeal. We affirm the judgment of the trial court.

Plaintiffs are brothers, a sister, and a niece of defendant. They are sons, a daughter, and a granddaughter of the grantor of the deed in question. Defendant grantee is a daughter of grantor.

Plaintiffs brought this action against defendant alleging undue influence, lack of consideration, lack of execution, and other defects in the deed. Plaintiffs took defendant's deposition. As a result of testimony thus secured, they amended their petition to allege lack of

delivery of the deed. That is the substantial issue presented here.

Some of the facts are either not in dispute or so established as to require only a statement of them. The grantor, hereinafter called the father, was at least prior to the deed in question the owner of several hundred acres of land in Howard County. The land was heavily encumbered. It had two houses on it. In 1938, the father, a widower, lived alone in one house. A married son, one of the plaintiffs, lived in the other house and was tenant on the land. The father was elderly and in poor health. Defendant, a widow with minor children, came to live with and care for her father in 1938. Thereafter until his death, she lived with and cared for him. In May 1944, defendant bought a home in St. Paul, and the defendant and the father moved into that home and resided there until his death.

On October 2, 1945, the father went to a lawyer in St. Paul and had him prepare a warranty deed conveying the land to the defendant. It was signed, witnessed, acknowledged, and taken from the lawyer's office by the father. He gave the deed to defendant at that time and she had it at all times thereafter. The father died July 28, 1950. Defendant recorded the deed August 3, 1950.

The deed contains the customary covenants of warranty, provides that it is subject to encumbrances of record, which the grantee assumes and agrees to pay, and "Grantor reserves the use of said premises during his natural lifetime."

The fact question presented here arises out of such evidence as the following: Plaintiffs at the trial called defendant as their witness and inquired into the statements in her deposition as admissions against interest. She testified that the land was hers the "minute he gave me the deed" although she testified in the deposition that she didn't claim or have title to the land until his death. She testified that the farm would "definitely"

be hers after her father's death. She testified at the trial that had the father changed his mind about the deed and had decided to sell the property or let the property go by will that he could have had the deed back, but that there was no agreement to that effect.

In the deposition, defendant was asked, "I suppose if your father had changed his mind about the deed and had decided to let the property go by the will he could have had the deed back if he wanted it, is that right?" Defendant answered, "That's right. The stipulation in the deed was that he could sell it if he wanted." And again defendant was asked, "That was part of the deal at the time he gave you the deed?" The answer was, "That's right." And again, "He said it was in the deed that if he decided to sell the ranch and go to Arizona, why he could," and that she agreed to that.

If as plaintiffs contend this evidence shows that there was a reservation of the father at the time of the giving of the deed that he could later dispose of the land if he wished, it also shows that, although mistaken, he thought the reservation was in the deed, and that it was there to protect the reserved right after title passed by the delivery of the deed.

There are two other matters of evidence that require mention.

There is evidence that in 1949, about threshing time, defendant asked one of the plaintiffs to go with her to the ranch; that "She thought the tenant out there was beating her out of the grain"; that the man who takes care of land bank matters told her "to go out there and watch when they threshed"; and defendant said to the witness, "it was just as much your interest as mine." The last statement out of context might relate to denial of full ownership in the defendant. But it was said when the father was living with reference to crops which under the deed, defendant did not claim. Obviously, it has no bearing on the issue here.

There is also evidence that the father sold one of

the houses on the land for $700 after "we moved to St. Paul." The moving to St. Paul was in May of 1944. The father executed the deed October 2, 1945, a year and four months thereafter. This evidence is of no controlling importance here.

There is no contention in the evidence or here that the father ever undertook to exercise the alleged reserved right either by seeking to recover the deed, to sell the land, or to have the title pass by will. He allowed the deed to remain in defendant's possession.

The fact that the deed was not recorded until after the grantor's death is not of itself sufficient to show nondelivery. Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183.

Defendant has the benefit of the following rules: The possession of a deed by the grantee, in the absence of opposing circumstances, is prima facie evidence of delivery, and the burden of proof is on him who disputes this presumption. While not conclusive, this presumption controls until overcome by clear and satisfactory proof. Kellner v. Whaley, *supra;* Cerveny v. Cerveny, 154 Neb. 1, 46 N. W. 2d 632.

Plaintiffs offer evidence to overcome this presumption which are in the form of admissions and subject in part to the infirmity pointed out in Kellner v. Whaley, *supra,* wherein we held: "An admission should possess the same degree of certainty as would be required in the evidence which it represents, and hence mere conjectures or suggestions as to what might have happened if certain circumstances had occurred, are not competent."

These admissions are also subject to the rule that: "An extrajudicial admission appearing in the deposition of a party taken before trial is not ordinarily final and conclusive upon him, but it may be competent and admissible as evidence in contradiction and impeachment of his present claim and his other evidence given at the trial, to be given such weight as the trier of fact

deems it entitled." Kipf v. Bitner, 150 Neb. 155, 33 N. W. 2d 518.

There is a direct conflict in the evidence both as to what was said and what was meant. The credibility of the defendant is involved. The trial court heard the evidence of the defendant and resolved those questions in defendant's favor. That conclusion must be considered under the rule that: "Actions in equity, on appeal to this court, are triable de novo in conformity with section 25-1925, R. S. 1943, subject, however, to the condition that when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying, and must have accepted one version of the facts rather than the opposite." Maddox v. Maddox, 151 Neb. 626, 38 N. W. 2d 547.

Under these rules we conclude the plaintiffs have not met their burden of proof.

Plaintiffs here assign as error the admission of a part of the evidence given by the attorney, who drafted the deed. In reaching our conclusion we have not considered the challenged evidence.

The judgment of the trial court is affirmed.

AFFIRMED.

WENKE, J., participating on briefs.

CARTER, J., dissenting.

The original petition filed in this case alleged that the deed in question was obtained by undue influence on the part of the defendant. The summons was served on January 2, 1951. On April 27, 1951, an amended petition was filed which alleged additionally that the deed was never delivered in the lifetime of Charles Cain with the intent to then pass the title or an interest therein. On January 9, 1951, the deposition of the defendant, Emily Killian, was taken. The plaintiffs' case rests largely, but not wholly, upon the admissions made by the defendant in this deposition.

The admissions made by defendant are substantially as follows: That she did not claim or have title to the land until her father's death; that her father always told her that until he died, or at least until he became so ill that he didn't perhaps talk sense, the farm was then to become hers; that if her father had changed his mind about the deed and decided to let the property go by the will, he could have had the deed back; and that the stipulation in the deed was that he could sell it if he wanted to and that it was part of the deal at the time he gave her the deed. She was then asked: "At any rate, whether or not it was in the deed in so many words, that was the understanding you had with your father?" Her answer was: "That's right." She testified that if her father wanted to sell the ranch he could do so and that these understandings were had at the time the deed was made out, and after that. She says that her father asked her to agree that if he decided to sell the ranch he was free to do so, and that she agreed to it. That she made the foregoing admissions against interest are not denied by her.

On her direct examination at the trial she again admitted that the farm was to be hers after the death of her father, as evidenced by the following question and answer: "Mrs. Killian, during all this time that you had this deed in your pocketbook, it was your father's intention that the farm would definitely be yours after his death, is that right? That's right."

It must be borne in mind that, at the time the deposition was taken, the only issue set forth in the pleadings was that of undue influence in the procurement of the deed by the defendant. Objections were interposed to all questions tending to bring out conversations had between the defendant and her father on the authority of section 25-1202, R. R. S. 1943. The foregoing section of the statute provides, insofar as it is applicable here, that no person, having a direct legal interest in the result of any civil action when the adverse party is the

representative of a deceased person, shall be permitted to testify to any transaction or conversation had between the deceased person and the witness unless the representative shall have introduced a witness who shall have testified to such transaction or conversation, in which case the person having the direct legal interest may be examined in regard to the facts testified to by such witness, but shall not be permitted to further testify in regard to such transaction or conversation. I submit that under the foregoing statute the defendant could properly be interrogated concerning the admissions against interest made by her, and no more. Having admitted the admissions to be true, only the presumption of a legal delivery of the deed stands against the admissions. I contend that the presumption of a legal delivery dissipates itself when opposed by the unequivocal admissions made by the defendant.

The trial court permitted this defendant in her capacity as the nominated executrix in her father's will to waive in open court the privilege of attorney and client between the attorney, who drew the will, and her father. The attorney then gave evidence as to what her father said at the time the will was prepared. This was clearly erroneous under our holding in In re Estate of Coons, 154 Neb. 690, 48 N. W. 2d 778. It is evident that the trial court relied upon this evidence to sustain the legal delivery of the deed for the simple reason that there was no other competent evidence upon which it could be sustained. In my opinion no basis exists for the application of the rule announced in the majority opinion to the effect that suits in equity will be tried de novo on appeal, and when the evidence is in irreconcilable conflict this court will consider the fact that the trial court accepted one version of the facts rather than another. This rule presupposes an irreconcilable conflict in the competent evidence before the court. As I view it there is no competent evidence to establish

the legal delivery of the deed and consequently there is no basis for the application of the rule.

The majority opinion gives credence to a statement by the defendant to the effect that the land was hers the "minute he gave me the deed." This was a conclusion of the witness, self-serving in character, and bore no relation whatever to the question whether or not the deceased intended to presently convey the title to the land on the date of the manual delivery of the deed. The majority apparently deem it important that the father made no attempt in his lifetime to exercise the reserved right to recover the deed, to sell the land, or to have the title pass by will. I fail to see how the failure to exercise a reservation can have any bearing whatever on the intent of the grantor at the time he manually delivered the deed. If he had exercised his reserved right, then probably no litigation would have ensued. If subsequent failure to exercise a reserved right is evidence of intent to convey present title by the manual delivery of a deed, our rules become ambiguous and indefinite, and the legal delivery of a deed becomes contingent upon subsequent conduct. Such is not the law. Even as a circumstance surrounding the transaction it is of little or no evidentiary value.

I submit that plaintiffs made a prima facie case in offering the admissions against interest made by the defendant which overcame the presumption of a legal delivery of the deed. There was no competent evidence in the record to sustain a legal delivery of the deed in accordance with the law of this jurisdiction as set forth in Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183, and Kula v. Kula, 149 Neb. 347, 31 N. W. 2d 96. It is clear to me that the change of position by the defendant shown by the majority opinion, even if it was competent to be shown, was induced by personal interest after the changes made in the amended petition made her evidence, given under oath in a deposition, fatal to the result which she desired. Defendant told a story in her

deposition which was consistent with every subsequent circumstance. She did. not file the deed with the register of deeds until after her father's death. She made no claim to the property in his lifetime and concealed the existence of the deed from her brothers and sisters. She repeatedly and unequivocally stated in her deposition that the deed was subject to recall and that the land was to be hers only at her father's death. She made at least one similar admission on the trial in the district court. It is clear to me under the undisputed competent evidence that Charles Cain attempted a testamentary disposition of the land in question by deed in violation of section 30-204, R. R. S. 1943. I would reverse the judgment of the district court and enter a decree setting aside the deed.

WENKE, J., joins in this dissent.