NETTIE M. SHORT ET AL., APPELLANTS, V. EARL P.
KLEPPINGER ET AL., APPELLEES.

81 N. W. 2d 182

Filed February 15, 1957.   No. 34038.

*Sterling F. Mutz*, for appellants.

*Louis B. Nore, Brogan & Brogan*, and *Robert F. Galloway*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

CARTER, J.

This is a suit in equity by the ten named residuary legatees in the will of Elizabeth J. Illian to have a deed to 240 acres of land executed on July 5, 1949, to appellees Earl P. Kleppinger and Hallie J. Kleppinger, declared null and void. The trial court found that the deed was properly executed and delivered on July 5, 1949, and quieted the title to the land described therein in appellees as tenants in common. The plaintiffs below have appealed.

The appellants, who will be hereafter referred to as the plaintiffs, are nieces and nephews of the deceased first husband of Elizabeth J. Illian. The appellees, who will hereafter be referred to as the defendants, are nephews of Elizabeth J. Illian, they being the sons of her deceased brother. Mrs. Illian died on January 5, 1954, without issue. On February 5, 1954, Roger I. Blatter was appointed administrator with will annexed of the estate of Elizabeth J. Illian, deceased, and he qualified as such. We shall hereafter refer to him as the administrator. The sole issue to be determined under the pleadings and evidence is whether or not the deed in question was delivered on July 5, 1949.

The substance of the evidence offered at the trial is as follows: On July 5, 1949, the deceased, accompanied by her nephew, Earl P. Kleppinger and his wife, Mildred, went to the office of her lawyer, Louis B. Nore, and caused the deed to be drawn and executed. Mr. Nore testified that after the deed was executed he

handed it to Earl Kleppinger at the direction of Mrs. Illian. Mildred Kleppinger testified that Mrs. Illian told Mr. Nore that she wanted the south farm, it being the one in question, to go to Earl and Hally and that he was to so draw the deed, that she wanted it drawn accurately as this was to be the final act. Mildred testified that, after the deed was drawn and executed, Mrs. Illian said to Mr. Nore: "Give those deeds to Earl,— give that deed to Earl. It is now his. It is his responsibility. I have given this property away. It is no longer mine." Mildred testified further that Mrs. Illian told Earl to take the deeds to Lincoln and keep them in his box in Lincoln. She says there was some discussion about registering the deeds and that Earl stated that since Mrs. Illian had the use of the land during her lifetime, why not wait until her death to register them and that Mrs. Illian replied: "If you do not register them at this time, immediately upon my death, take them to the court house and register them. Don't wait for anything, not even for my funeral." She then stated that Mr. Nore placed the deed and an affidavit prepared by Mr. Nore in an envelope and sealed it. A statement was placed on the outside of the envelope and signed by Mrs. Illian. The statement was: "TO THE EXECUTOR OF THE ESTATE OF ELIZABETH J. ILLIAN:— Please hand this envelope to Earl P. Kleppinger and Hallie J. Kleppinger, after my death. It has in it certain valuable property belonging to said persons. Signed, Elizabeth J. Illian." Mrs. Illian then said: "Now, give that to Earl." Mildred stated that Earl held the envelope in his hand and, after some discussion decided not to take it with him because of "the distance and the danger of transportation, and the necessity to bring them back for registration and because there were other deeds, as you know, involved, and these people who were to receive the other deeds were scattered all over the United States,—one of them was even in Hawaii." The record shows that Mrs. Illian and Mr. Nore then took

the envelope to the bank, while the others awaited their return.

Louis B. Nore, the attorney for Mrs. Illian, testified that he prepared the deed at her request; that it was signed by Mrs. Illian in his presence; and that he took the acknowledgment on the deed as notary public. He testified that after the execution of the deed and affidavit he handed them to Earl P. Kleppinger at the specific request of Mrs. Illian. He testified also that he placed the deed and affidavit in the envelope hereinbefore referred to and caused it to be sealed. He further stated that the envelope and contents were handed back to him and that he and Mrs. Illian took it to the bank and placed it in Mrs. Illian's private box.

The record shows, also, that on July 6, 1949, Mrs. Illian made her will in which it was provided: "Fourth: I have conveyed all my real estate by good and sufficient warranty deeds and I do not own any real estate at this time."

There is evidence in the record that on an occasion, probably in 1952, Mrs. Illian was asked by a neighbor about selling off a few acres of the farm. She replied that she could not sell it because it was not hers, that she had given it away by deed. A neighbor, Grace Langrall, testified that she was well acquainted with Mrs. Illian and that the latter had told her that her real estate, except her home, was to go to her side of the family. One Dorothy Hohbein, a housekeeper for Hally J. Kleppinger, testified that Mrs. Illian told her in 1951: "Well, I deeded Earl and Hally the south farm."

There was no testimony offered by the plaintiffs which disputed or impeached the evidence of the defendants tending to establish the delivery of the deed. Plaintiffs do contend, however, that the evidence of Mildred Kleppinger and Louis B. Nore is incompetent, and that if this be so, the evidence is insufficient to sustain the judgment of the trial court.

The record shows that on November 13, 1953, Roger I. Blatter was appointed guardian of Elizabeth J. Illian as an incompetent person. In such capacity he entered the box belonging to Mrs. Illian and found the envelope and contents to which reference has hereinbefore been made. He took it, accompanied by his attorney, to the office of the county judge of Boone County. The envelope and contents were thereafter retained by the county judge for safe keeping. On March 2, 1954, the envelope and contents were delivered to Hally J. Kleppinger for himself and for Earl P. Kleppinger by power of attorney, a receipt being given therefore by Hally J. Kleppinger. The deed was recorded on March 2, 1954. It was stipulated by the parties that no instruments were filed of record relating to the land described in the deed between July 5, 1949, and March 2, 1954.

Whether or not a deed is delivered ordinarily depends upon the intention of the grantor as determined from the facts and circumstances of each particular case. No particular acts or words are necessary to constitute delivery of a deed. Anything done by the grantor from which it is made to appear that a delivery was intended, whether by words or acts, or both, is sufficient. The criterion upon the question of delivery is whether or not the intention of the grantor was that the deed was to operate as a muniment of title to take effect presently. If such was the purpose, the delivery was complete and the title to the property passed. A conveyance once made cannot be changed by any subsequent act or statement, unless it meets the requirements of the law governing a conveyance or nonacceptance of the property. Hipsley v. Hipsley, 162 Neb. 518, 76 N. W. 2d 462; Dowding v. Dowding, 152 Neb. 61, 40 N. W. 2d 245; Black v. Romig, 151 Neb. 61, 36 N. W. 2d 772. It is clear from our holdings that, without a delivery in the lifetime of the grantor, there is no valid deed of conveyance. Where the proof shows only the execution of deeds which were found among the private papers

of the grantor after his death, it is not sufficient to establish delivery.

The evidence of Mildred Kleppinger supports the finding of the trial court that there was a delivery of the deed in the instant case. Plaintiffs contend, however, that her evidence was incompetent under the provisions of section 25-1202, R. R. S. 1943, commonly called the dead man's statute. This statute prohibits persons having a direct legal interest in the result of any civil action or proceeding from testifying to any transaction or conversation had between the deceased person and the witness, when the adverse party is the personal representative of a deceased person and their interest is adverse to that of the respresentative who makes objection and does not waive the prohibition. Mildred Kleppinger, as the wife of Earl P. Kleppinger, one of the grantees in the deed involved in the present case, has a direct legal interest in the result under our holdings in Oft v. Ohrt, 128 Neb. 848, 260 N. W. 571, and Garner v. McCrea, 147 Neb. 541, 23 N. W. 2d 731.

With reference to the testimony of Mildred Kleppinger, the evidence shows that the law office of Louis B. Nore consists of two rooms. At the time the deed was drawn and executed, Mrs. Illian, Mr. Nore, and Earl Kleppinger were in the inner office. Mildred sat just outside of the open door connecting the two rooms. She took no part in the conversations or transactions that took place at that time, although she heard what was said and saw what was done. The rule in such cases is: The statute does not apply where the transaction or conversation was not between the witness and the deceased person, but between the latter and a third party, in which the witness took no part. Kroh v. Heins, 48 Neb. 691, 67 N. W. 771; McNea v. Moran, 101 Neb. 476, 163 N. W. 766; Tyler v. Estate of McDougal, 126 Neb. 534, 253 N. W. 672; Dvorak v. Kucera, 130 Neb. 341, 264 N. W. 737. The evidence of Mildred Kleppinger

was clearly admissible under the foregoing holdings of this court.

The plaintiffs contend also that the evidence of Louis B. Nore, the attorney for the deceased, was not admissible for the reason that it was a privileged communication. The evidence shows that Mr. Nore drafted the deed and signed it as a witness at the request of Mrs. Illian. His evidence relates to the facts concerning the drafting, execution, and delivery of the deed. It does not relate to communications or transactions that are privileged because of their confidential nature. In re Estate of Coons, 154 Neb. 690, 48 N. W. 2d 778; Lennox v. Anderson, 140 Neb. 748, 1 N. W. 2d 912; Brown v. Brown, 77 Neb. 125, 108 N. W. 180. In any event, the presence of Earl and Mildred Kleppinger had the effect of removing any privilege that otherwise might have been invoked. Communications between attorney and client made in the presence of others do not constitute privileged communications within the meaning of sections 25-1201 and 25-1206, R. R. S. 1943. It is only communications which are confidential that are protected. Directions given by a grantor to an attorney acting as scrivener in the preparation of a deed do not come within the purview of the statutes governing privileged communications. Jenkins v. Jenkins, 151 Neb. 113, 36 N. W. 2d 637; Crawford v. Raible, 206 Iowa 732, 221 N. W. 474. We think the trial court was right in admitting this evidence.

The evidence shows that on the day following the execution of the deed, Mrs. Illian executed her will, in which it was stated that she had no real estate as she had given it away by deed. This question was before the court in Hipsley v. Hipsley, *supra*, in which we said in effect that this was evidence confirming the execution and delivery of the deeds in question. We think the provision of the will in the instant case is evidence to be considered in connection with all the circumstances in determining whether or not there was a delivery of

the deed by Mrs. Illian with the intent to divest herself of the title to the lands described therein.

A deed does not become operative until it is delivered with the intent that it shall become effective as a conveyance. Whether such intent actually existed is a question of fact to be determined by the evidence and circumstances of the case. If the grantor's conduct and all the circumstances connected with the transaction are such as to indicate that it was the intention of the grantor to give effect and operation to the deed, and to relinquish all power and dominion over it, the law will effectuate the deed in accordance with this intention, and will construe the delivery as valid. A deed once delivered does not cease to be a deed because it is subsequently found in the possession of the grantor. In the present case there is evidence of the actual delivery of the deed to one of the grantees, accompanied by the statement that the property is now his. The attorney for the grantor testified to the preparation, execution, and delivery of the deed to Earl P. Kleppinger, all at the instance of Mrs. Illian. The will made by Mrs. Illian on the day following the execution of the deed confirms her intention to relinquish all power and control over the deed. The evidence of her subsequent statements and conduct is consistent with the finding that a delivery was made. There is no evidence at any time after the execution of the deed that her conduct was inconsistent with an intent to deliver the deed on July 5, 1949. On a trial de novo, we arrive at the same conclusion as the trial court that the evidence sustains the execution and delivery of the deed on July 5, 1949, with the intent to convey the land described therein to the grantees. The decree of the district court is affirmed and the costs of the appeal are taxed against the appellants.

AFFIRMED.

SIMMONS, C. J., dissenting.

I have no disagreement with the rules of law stated

by the court. The court fails to state or consider a fundamental rule applicable here when the deed was found in the possession of the grantor.

It is: "It is essential to the validity of a deed that there be a delivery and the burden of proof rests upon the party asserting delivery to establish it by a preponderance of the evidence." Lewis v. Marker, 145 Neb. 763, 18 N. W. 2d 210.

This is a trial de novo with the burden of the proof on the defendants.

There is another rule particularly applicable here, which the court fails to state or consider. It is: "An instrument is not delivered until it has passed beyond the dominion, control, and authority of the maker and is no longer capable of being recalled." Kula v. Kula, 149 Neb. 347, 31 N. W. 2d 96. The deed here was found in Mrs. Illian's safety deposit box where it had been placed by her and her attorney. It was under the "dominion, control, and authority of the maker."

The court states: "There was no testimony offered *by the plaintiffs* which disputed or impeached the evidence of the defendants *tending* to establish the delivery of the deed." (Emphasis supplied.)

I agree that the plaintiffs did not offer such evidence. The only eye and ear witnesses on that issue were the attorney and an interested party defendant. However, the defendants did offer such evidence. It is largely ignored by the court.

I refer herein to the Kleppingers by their first names.

I disagree with the ultimate conclusion of the court. The court's conclusion rests upon two separate conclusions. One conclusion is a statement that the deed involved in this transaction was executed and delivered on July 5, 1949.

The other conclusion is that on the "day following the execution of the deed" Mrs. Illian executed her will.

By thus separating the transactions with reference to the deed by 1 day from the execution of the will, the

court considers the deed as a delivered instrument and the will as being made "subsequent to the execution of a deed" and only of importance to determine whether or not there had been a delivery of the deed the preceding day with intent to convey. The court separates into two separate transactions that which was in fact all done as a part of one transaction.

The only evidence in the record upon which the court can rest a finding of the execution of the will on the "subsequent" day is its date—July 6, 1949. The attorney testified only that it was dated "one day subsequent" to the deed. The deed is dated July 5, 1949. No witness testified as to an independent knowledge of the signing of the deed on that date.

It is to be remembered that the transaction took place in July 1949. The witnesses testified in July 1955—6 years later.

I state here the record as to whether the transactions took place on 1 day or 2 days and will discuss later the evidence as to the transactions.

The attorney was asked on direct examination if Mrs. Illian consulted him "on or about the 5th day of July, 1949." He answered "Yes." He was then asked if "at that time, on the 5th day of July, 1949" he performed services for her. He answered "Yes" and then relates the preparation of "certain warranty deeds," one of them being the deed in question. That was "on or about" July 5, 1949. Mildred was asked on direct examination if she accompanied her husband to Albion "on or about the 5th day of July, 1949." She answered "Yes" and then was asked and testified as to the matters involved in this litigation. She does not otherwise fix the date. I submit that the date of July 5, 1949, which the court accepts rests fundamentally upon the date on the deed.

It is not material to our consideration here as to whether the transaction of the deed and the will occurred on July 5 or July 6, 1949. It is material to deter-

mine whether one or two conferences and one or two days are involved.

As to that there can be no question from this record that everything that had to do with the drafting of the deeds and the execution of the will occurred at one conference, at one time, and on one day only, and in the attorney's office.

Both the attorney and Mildred testified as to where the attorney, Mildred, Earl, and Mrs. Illian sat while the deeds were being prepared and signed, and the disposition discussed. There is not even a suggestion in the record of a meeting in the attorney's office of more than one day, or even that the meeting broke up and reassembled on the day it was held. Both witnesses testified to a continuing event, beginning when Mrs. Illian, Earl, and Mildred went to the attorney's office, and ending when the attorney and Mrs. Illian took the deeds to the bank and Earl and Mildred stood outside watching the culmination of the day's activity.

The court accepts the above as correct as to the deed. The question then is: Does it apply also to the will? The answer of the record that it does is without dispute. After testifying about the deeds, the attorney testified that he prepared the will; that Earl, Mildred, Mrs. Illian, and himself were present; and that the will was prepared "at or about the same time as the deeds." There is no evidence of any "subsequent" day execution of the will and no evidence of Mildred and Earl being present on a "subsequent" day. Mildred confirms this testimony, for she testified that there was discussion about the plaintiffs "when the deed and the will were prepared in Mr. Nore's office" and when she was "sitting in the outer office." She testified as to only one time when she was sitting in the outer office or elsewhere in the office. The plaintiffs are named in the will.

I now go to the merits of the case.

Certain facts in this record are either stipulated or not in dispute. I state those first.

Mrs. Illian was the owner of five pieces of real estate.

By an instrument dated July 5, 1949, she executed and acknowledged a warranty deed to 240 acres of this property wherein Earl and Hallie are named as grantees "subject only to a life use reserved to said grantor." This is the deed involved in this action.

The deed (and an affidavit which was not admitted in evidence) were placed in an envelope upon which was typed the following: "TO THE EXECUTOR OF THE ESTATE OF ELIZABETH J. ILLIAN:- Please hand this envelope to Earl P. Kleppinger and Hallie J. Kleppinger, after my death. It has in it certain valuable property belonging to said persons." The writing was signed by Mrs. Illian. The envelope was sealed and placed in Mrs. Illian's safety deposit box by her and the attorney.

By an instrument dated July 6, 1949, Mrs. Illian executed her will. It contained two provisions important here: "I have conveyed all my real estate by good and sufficient warranty deeds and I do not own any real estate at this time. * * * I make, constitute and appoint Earl P. Kleppinger and Delma Garmire Wilson to be Executor and Executrix of this, my last Will and Testament, hereby revoking all former wills by me made."

The direction on the envelope is related to the naming of Earl as "Executor" in the will. It was a direction to him as Mrs. Illian's executor to deliver the deed to himself and Hallie *after* Mrs. Illian's death.

On July 10, 1953, a petition was filed, signed by Earl for the appointment of a guardian for Mrs. Illian on the ground of mental incompetency. In it is the statement of fact made by Earl that Mrs. Illian was then the owner of real estate of the value of $40,000. In this connection the inventory of the estate filed June 9, 1954, lists five parcels of real estate with the recital that decedent had conveyed it "reserving a life estate unto herself." The appraised value was $48,400. On August 17, 1953, Hallie was appointed as guardian. On

October 22, 1953, Hallie resigned as guardian, and Roger I. Blatter was appointed on October 30, 1953. On November 13, 1953, letters of guardianship were issued to him. Mr. Blatter as such guardian caused Mrs. Illian's safety deposit box in the bank to be opened and found therein the envelope above referred to, together with Mrs. Illian's will. He deposited the envelope, unopened, and the will with the county judge.

On January 5, 1954, Mrs. Illian died and Hallie petitioned for the probate of her will. The executors named in the will did not qualify. Mr. Blatter was appointed administrator with the will annexed.

On February 13, 1954, by an instrument acknowledged in the State of Florida, Earl executed a power of attorney to Hallie to receive the envelope from the administrator with the will annexed and containing this language: "After receiving said envelope, my attorney, Hallie J. Klepping (sic) is to open the envelope and show the contents to the said administrator, and to register any deeds or take any steps necessary to obtain for me legal ownership of any property involved. Hally J. Kleppinger is to have the power to act as Attorney for me only until such time as any deeds to property contained in said envelope is registered in the courts and legal ownership established."

On March 2, 1954, Hallie receipted for the envelope from the administrator. The receipt acknowledged that the deed here involved was in the envelope. The deed was recorded March 2, 1954.

These proceedings clearly negative any contention of Hallie or Earl that they considered themselves the grantees in a deed delivered in Mrs. Illian's lifetime. The court gives no consideration to these two documents.

Now we go to the other evidence.

If we undertake to state and analyze the evidence from the consideration only of the one deed here involved, as does the court, the evidence points only to chaotic confusion as to what Mrs. Illian did and intended to do.

If the evidence is stated and analyzed from a consideration of all that the record shows, then it leads to the conclusion that this deed was only a part of a testamentary disposition of Mrs. Illian's estate by the use of deeds and a will. I have heretofore recited the undisputed evidence as to the concurrent drafting of the deeds and the will that sustains that conclusion.

On or about July 5, 1949, Mrs. Illian, Earl, and Mildred went to the office of the attorney. As to the deed here involved Mildred testified that Mrs. Illian told the attorney that "she wanted to leave" the land here involved to Earl and Hallie. That language indicates a testamentary intent and not an intent to convey presently.

The record repeatedly refers to other deeds that were drawn and executed at that time, purporting to convey other parcels of land to other grantees. The provisions of the other deeds are not shown. It does appear that the grantees in those deeds lived at other places in the United States and that one lived in Hawaii.

The particular deed here involved is dated and acknowledged as of July 5, 1949. The dates of the other deeds do not appear. The will is dated July 6, 1949. It is apparent, however, that the deeds and the will were executed as a part of one general plan of disposing of Mrs. Illian's property. The recital in the will that "I have conveyed all my real estate by good and sufficient warranty deeds" indicates that the will was drafted after the execution of the deeds. However, as above pointed out, that all occurred on the same day as a part of the same transaction. The recital that "I do not own any real estate at this time" is not in accord with the reserved life estate and the present contention of Earl and Hallie, for at that time Mrs. Illian owned a life estate, a freehold interest, in the land. The court accepts this statement in the will as literally true and as "evidence confirming the execution and delivery of the deeds in question." (Emphasis supplied.) The state-

ment is contrary to the terms of the deed and the contention of the defendants here. The court uses an incorrect statement from the will as a reason to sustain a finding of delivery. The above provision in its entirety is obviously intended as an explanation of the absence in the will of devises of particular real estate. The deeds performed that part of the testamentary disposition.

After the deeds were executed, the question came as to "what would be done" with the deeds. It was suggested that they be recorded at once. Earl disapproved. There was more "discussion" and it was suggested that Earl take them to Lincoln and record them "immediately" upon Mrs. Illian's death and not even to wait for her funeral. Had Mrs. Illian decided to follow this second plan then it is clear that Earl had all the deeds with directions to take steps—after Mrs. Illian's death—that would vest title in the grantees in all deeds. On this record there could be no claim of delivery as to the other deeds either at that time or before Mrs. Illian's death. The deed here involved is in the identical position as the other deeds. It remained under the dominion, authority, and control of the maker. That fact is established conclusively by what was next discussed and done. The second proposal was put aside because of the dangers involved in transportation and the necessity of bringing the deeds back to Albion for recording. It was then decided that the deeds would be put in envelopes and with directions to Mrs. Illian's "Executor" —Earl.

If the conclusion of the court is correct, it follows that when Mrs. Illian and Earl sat there and discussed the second and third plans the deeds had already been delivered and title had passed. The discussion of the second and third plans was, under the holding of the court, idle chatter. It is sufficient to say that none of the parties so considered it.

The disposition of the other deeds is not shown di-

rectly. However, the guardian testified to the finding in Mrs. Illian's safety deposit box of envelopes with instructions to the executor on the outside, and that the envelope here involved and the others were delivered to the county judge.

The evidence points to the conclusion that the final determination of the disposition of the deeds was to keep them in the possession of and under the control of Mrs. Illian and negatives any intent to deliver them under the rule earlier stated herein.

It is clear from the record that the deeds were kept in the possession of the attorney, who represented Mrs. Illian and not the defendants in this matter, and that when the deeds, still in the possession of Mrs. Illian and her attorney, were taken by them and put into the safety deposit box they were in the possession of Mrs. Illian and her attorney. They had not "passed beyond the dominion, control, and authority of the maker." There was no necessity of showing that they were "capable of being recalled." See Kula v. Kula, *supra*. There was no claim of Earl that the deed was his as a delivered instrument. He suggested and agreed to this procedure. Hallie knew nothing about it.

There is other evidence in the record that sustains that conclusion. It relates to the particular deed here involved and "those deeds." The attorney and Mildred testified that this deed was handed to Earl at Mrs. Illian's directions. He had the deeds in his hands with the statement from Mrs. Illian that the deed "is his responsibility"; it was his "to take care of."

These are words that indicate directions to an agent as to his care and responsibility. It would seem that they were surplusage if there was an irrevocable delivery at that time. The court ignores the limitations and conditions of these statements.

There is other evidence in this record that the parties discuss here.

Hallie and a Miss Hohbein called upon Mrs. Illian in

the summer of 1951 at her home. Her testimony is that Mrs. Illian asked Hallie "who I was" and he said "I was his housekeeper," and that Mrs. Illian said, "* * * I deeded Earl and Hally the south farm." From the record it appears that that was a statement made to a total stranger without any preliminary discussion. Mildred testified to having heard that conversation and others of similar import.

The defendants, however, called a neighbor lady of Mrs. Illian. She is not shown to have any possible interest in the outcome of this litigation. This lady testified as to statements made to her by Mrs. Illian as to where and to whom her property was "to go." Those words were repeated four times in her direct examination. They obviously relate to a future vesting of title.

Mildred testified to the fact that Mrs. Illian kept the key to her bank box secreted in her home and that "every time we were up there" Mrs. Illian discussed the location of the key with them, showed Earl and Mildred where it was hidden, and admonished them that no one else was to know its location. That trust was kept, apparently, for the guardian found it necessary to drive the pins out of the hinges to the door of the enclosure where the box was kept in order to get access to it. The key was found in the house by the administrator after Mrs. Illian's death.

Earl testified that he had access to the safety deposit box at all times. Mildred testified that on at least two occasions Earl left Mrs. Illian's home with directions to go to the bank and open the box for specific purposes not connected with these transactions, and that Earl returned later and reported what he had done. This evidence was offered, as defendants argue here, to show access to the deed and as a foundation for a presumption of delivery. The attempt was so futile that the court ignores it.

It does not appear that either Earl or Mildred knew

that the deed or deeds and will were in the box. The attorney testified that in the presence of Mrs. Illian he put the envelope containing the deed in the bottom of the safety deposit box. We find no evidence of when the will was put into the box. The will and the envelope were in the box when the guardian examined its contents.

It appears that at one time during this transaction Earl had possession of the deed involved here along with the other deeds. He had that possession obviously while it was being determined what should be done with the deeds. At no time under this evidence was his possession that of a grantee. Whatever tentative authority Earl may have had to later deliver the deeds for Mrs. Illian, it was almost immediately revoked when other disposition of the deeds was determined upon by Mrs. Illian. Earl then made no claim of delivery but readily concurred in the alternate disposition. In fact it appears that he suggested it and made no claim to the deed as grantee, and handed them back to the attorney who put them in his pocket and "later" took them to the bank and put them into Mrs. Illian's safety deposit box while Earl and Mildred watched as they went to the bank. Again Earl made no protest or claim that the attorney and Mrs. Illian had deeds which had been delivered to him.

In Smith v. Black, 143 Neb. 244, 9 N. W. 2d 193, we held: "The criterion upon which the question of delivery depends is as to whether or not the intention of the grantor is that the deed shall operate as a muniment of title to take effect presently, or in other words, whether or not it has passed beyond the dominion, control and authority of the maker, and is no longer capable of being recalled."

Tested by that rule there was no delivery here to Earl as a grantee.

I am mindful of the fact that in the endorsement on the envelope containing the deed here involved Mrs.

Illian recited that it contained "property belonging to" Earl and Hallie. Standing alone these words might well import a present ownership of the contents. They do not stand alone. They must be construed together with the direction to Earl, her named executor, to deliver "after my death." It was the obvious intention of Mrs. Illian that the envelope and contents should not be delivered to Earl and Hallie until after her death and that the property rights therein should vest on delivery after Mrs. Illian's death, and not before. Together the language means when delivered the property right vests.

The court rests its affirmation largely on the testimony of Mildred. She was a willing witness. Under our holding in Holladay v. Rich, 93 Neb. 491, 140 N. W. 794, she "had a direct legal interest in the result of the suit." The court screens out and states that part of her evidence that is most favorable to the defendants or, as stated by the court, that which is "tending" to establish delivery. I would state and weigh all her testimony together with the evidence of other witnesses, as well as the facts and circumstances surrounding the execution and retention of dominion, authority, and control of the deeds and the will. The will and the deeds were all a part of one transaction. Mrs. Illian reserved dominion, authority, and control.

I would hold that the defendants have not sustained their burden, and that delivery of the deed was not proven to have been made in Mrs. Illian's lifetime. I would reverse the judgment and remand the cause with directions, as to this feature of the case, to render judgment for the plaintiffs.