W. L. PHILLIPS SONS, A COPARTNERSHIP, APPELLANT, V. NORTHWEST REALTY COMPANY, A CORPORATION, ET AL., APPELLEES.

43 N. W. 2d 6

Filed June 15, 1950. No. 32736.

*Crosby & Crosby*, for appellant.

*Van Pelt, Marti & O'Gara, Cline, Williams & Wright*, and *Dent & Plummer*, for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by W. L. Phillips Sons, a copartnership, plaintiff and appellant, against Northwest Realty Company, a corporation; Henry M. Jones and Mary M. Jones, his wife; Alfonso W. Shilling and Flóra M. Shilling, his wife; John N. Collier and Helen L. Collier, his wife; James S. Hatcher and Audrey F. Hatcher, his wife; Amos A. King and Martha A. King, his wife; Charles Brittan; The First Trust Company of Lincoln, Nebraska, a corporation; and Kenneth J. Brownell, doing business as North Platte Electric Company, defendants, to foreclose a mechanic's lien filed against five lots and the houses thereon which houses had been constructed by the plaintiff under contract with the defendant Northwest Realty Company while it was owner of the lots. This defendant will be hereinafter referred to as the company. Charles Brittan was made a defendant as president of the company. Kenneth J. Brownell was made a defendant as the holder of a subcontractor's lien.

The First Trust Company of Lincoln was made a defendant as the holder of mortgages on the houses. The other defendants are subsequent purchasers of the lots and houses.

By its petition the plaintiff alleged that on or about September 14, 1946, it entered into a verbal contract with the defendant corporation to construct for it five dwelling houses on five parcels of real estate in North Platte, Nebraska, the description of which is not important here, and to furnish all materials and labor therefor for which the company agreed to pay a fixed amount of $40,712.45; that it completed the houses; and that a proper lien was filed setting forth the items of cost of construction chargeable against the company and the payments made under the contract. After deducting the payments made it claimed that there was a balance due and owing of $12,459.85 with interest from May 15, 1948. For this amount it prayed judgment and for foreclosure of its lien.

To the petition of the plaintiff the company and Charles Brittan filed an answer and cross-petition. Following a general denial they admitted the corporate existence and capacity of the company and the filing of the lien. They alleged that all acts in the premises by the defendant Brittan were on behalf of the company and involved no personal liability on the part of this defendant. They admitted that an oral contract was entered into with plaintiff for the construction of the five dwelling houses whereby the plaintiff was to furnish all materials and labor but that the agreed price therefor was $26,650 which was later increased by ten percent or to $29,315, all of which, after taking credit for payments made and payments made on behalf of plaintiff, has been paid except $498.90 which was tendered to the plaintiff. The cross-petition requires no consideration.

The defendant Kenneth J. Brownell filed an answer and cross-petition the substance of which was a declara-

tion of his lien and a prayer for foreclosure. As to it there is no controversy.

The First Trust Company of Lincoln filed an answer setting up its mortgages. Concerning these there is no controversy.

The remaining defendants filed an answer and concerning their rights no controversy arises in this action.

A trial was had to the court which resulted in findings and decree that the plaintiff had not sustained proof of the agreement alleged in its petition and in effect that the company had sustained the agreement alleged in its answer. It was found and decreed that the company was indebted to plaintiff in the sum of $1,062.40 with interest at six percent from May 15, 1948, from which accumulated amount the company was entitled to deduct $636.49 in favor of Kenneth J. Brownell, leaving a net amount of $518.47 with interest at six percent from date of decree due and owing to plaintiff from the company.

The decree in its other aspects has no pertinence to the questions which are presented for determination on appeal.

A motion for new trial was duly filed and at the same time a motion for leave to amend the petition so as to set forth a cause of action grounded on quantum meruit rather than on the contract alleged in the petition. Both motions were overruled. From the decree, the order overruling the motion for new trial, and the order overruling the motion for leave to amend, the plaintiff has appealed.

The plaintiff, as grounds for reversal, has set forth eight assignments of error.

As we interpret them the first two amount to a contention that the evidence preponderantly supports the cause of action set forth in the petition and that the court erred in not so finding.

Again as we interpret them, the third, fifth, sixth, and seventh amount to a contention that assuming that the evidence does not sustain the cause of action set forth

in the petition it preponderantly sustains a cause of action in quantum meruit for the amount sued for and the court, either on the petition without amendment or with amendment which was requested after trial, should have rendered judgment in plaintiff's favor accordingly.

The fourth is a contention that the court erred in holding that the burden was not on the company to prove the verbal contract alleged in the answer.

The eighth relates to the admissibility of evidence.

The fourth assignment will be considered first. It has been pointed out herein that the plaintiff in its petition relied on what it alleged was an oral agreement between the parties. The company relied on an oral agreement which with regard to service to be rendered was like that alleged by plaintiff but entirely different as to payment for the service. The particular complaint here is that the court erred in holding that the burden was not on the company to prove the verbal contract alleged in the answer.

Whether or not the legal proposition presented here is sound we are not called upon to determine. No such pronouncement by the trial court has been preserved in the record for presentation here on review. At no place in the decree does the court refer to the burden of any party. The effect of the conclusions arrived at as disclosed by the decree is that the cause of action of plaintiff was not sustained but that the contentions of the company in its answer found sufficient support in the evidence. The decree was entered, if we are to consider the record only, as we must, on that basis.

As to the first two assignments, the evidence does not sustain the agreement claimed by the plaintiff as literally alleged. The agreement as literally alleged recites a consideration of $40,712.45. Proof of this has not been attempted. The proof adduced by plaintiff supports an oral agreement by the terms of which the plaintiff agreed to build the five houses and furnish all materials and labor for which he was to receive the equivalent of what the

Federal Housing Administration would allow as a final loan on the completed buildings plus about ten percent of such final loans. The pertinent testimony in this regard is found in questions Nos. 420, 421, 422, 423, 431, 432, 433, and answers. This, according to Delmond J. Phillips who acted for and on behalf of the plaintiff, constituted the contract for the construction of these houses. He, however, in other testimony referred to later in this opinion expressly repudiated the theory advanced here that he contracted with reference to a Federal Housing Administration loan.

The petition was based on a theory other and different from that of the mechanic's lien and also that of the contract testified to by the witness Delmond J. Phillips. The mechanic's lien and the contract testified to were based on the theory that there was a contract which required the defendant corporation to reimburse plaintiff for all material and labor and to pay in addition ten percent of some amount.

The record is devoid of proof on the part of plaintiff of any definite contractual basis for the construction of the houses or for a lien except the one testified to by Delmond J. Phillips to which attention has already been directed, that is for cost of material and labor plus ten percent of a final Federal Housing Administration loan.

By the mechanic's lien the plaintiff claimed a right of recovery for material and labor, $34,899.95; social security, job insurance, compensation, etc., $1,804.88; use of small tools, $306.49; and contractor's fee, $3,701.13; total, $40,712.45, less payments of $27,592.60, leaving a balance due of $13,119.85. The item of $3,701.13 is ten percent of the total of the other items. It is this item together with the other items which are charged as materials and labor used in the construction of the buildings for which plaintiff seeks to recover under the terms of the contract alleged.

As to the contract concerning which the plaintiff offered proof, that is that it should receive an amount

equivalent to a maximum final Federal Housing Administration loan plus ten percent, no evidence was adduced to inform the court as to the amount which would be recoverable on that theory. It is true that plaintiff sought to introduce evidence as to loan limits on the properties. This was not to sustain the theory of this claimed contract but to discredit the theory of the company that there was another and different contract.

As to the theory of the mechanic's lien, which was the substantial theory on which the case was presented to the district court and on which it is being presented here, there is no evidence whatever to give it a contractual basis.

The two assignments of error being discussed relate to alleged error of the court in relation to proof of the cause of action set forth in the petition. The assignments must fail since it becomes clear from what has been said that there has been a total failure of proof of right of recovery on any contractual theory or basis.

The plaintiff contends that in the circumstances there is ambiguity and uncertainty as to the arrangement between the two parties directly involved and in consequence it is entitled to the benefit of the following rules:

Where a contract is ambiguous as to the rate of compensation it will be interpreted most strongly against the owner in favor of the contractor. 17 C. J. S., Contracts, § 367, p. 825.

Where the terms of a contract are uncertain the interpretation which evolves the more reasonable and probable contract should be adopted. 17 C. J. S., Contracts, § 319, p. 739.

While these may be salutary rules in appropriate situations they can have no application in this situation. Here we are considering a case wherein on one theory there is no proof of a right of recovery and on another theory there is an absence of proof of a contract.

It follows then that if the plaintiff is to recover for

any amount on any theory of its own it must be on quantum meruit. Whether or not a recovery may be had on quantum meruit depends upon whether or not by its own conduct it has been prevented from pursuing that theory, and whether or not the company has as a defense to any cause of action sustained proof of a definite agreement under which the buildings were to be constructed and for which they were to be paid.

On the trial of the case the theory of quantum meruit was not presented to the court. The court had only the contractual theories of the plaintiff which have been considered and discussed neither of which, as has been pointed out, was sustained, and the contractual theory of the defendant which the trial court by its decree concluded had been sustained.

If, therefore, this being an action in equity, this court considering the case de novo arrives at the same conclusion as did the trial court in this respect it will be unnecessary to consider either the propriety of the proposed amendment embodying the theory of quantum meruit or the evidence which plaintiff contends supports the theory. We therefore proceed to a consideration of the evidence adduced in support of this theory.

Charles Brittan who handled the transactions on behalf of the company gave testimony as to the agreement between the parties. The pertinent parts will be set forth in summary rather than by quotation. He said that he first talked to Delmond J. Phillips about the construction of the houses in May or June 1946 for about 30 minutes. The plans were submitted at that time. At that time no figures were submitted. About three weeks later he talked to Phillips again and asked him what he figured he could build the houses for and Phillips told him $26,650. He then asked when building could start and Phillips said soon and that he thought he could have them finished about Christmas. Brittan told him to go ahead. As a part of the conversation it was agreed that plaintiff was to furnish all material and labor in-

cluding plumbing. He stated that nothing was said about percentage relating to insurance, overhead, or a contractor's fee over cost. He said that there was no further conversation relative to cost until November 24, 1946, when Phillips told him that he doubted if he could build the houses for the agreed amount of $26,650. He then informed Phillips that they were going to get some raises in amount of loans and had gotten some raises and asked Phillips if he could build them for ten percent additional whereupon Phillips replied that he could. Brittan then in agreement with plaintiff added ten percent to the original cost and made a contemporaneous memorandum thereof which memorandum was adduced in evidence. Thus the company contends that the total consideration ultimately agreed upon for the construction of the houses was $29,315.

Corroborative of the contention of the company is a check made payable to the plaintiff in the amount of $2,931.50 which was cashed without protest at the time or later which had on its face the following: "10% payment on 5 houses at N. Platte." This amount was exactly ten percent of the final amount which the company says was agreed upon.

On August 2, 1947, Brittan wrote Phillips the following letter:

"I today received second payment on the houses, and I took up your note at the Guardian State Bank and am enclosing them herewith to you, marked paid. Here is the way I have this, and if it isn't correct let me know. Total amount due you $29,315.00 Amount due you for ½ payment $14,657.50. We paid you $2931.50, leaving a balance due you on ½ $11,726. We paid you in checks $3000.00. We paid the bank $8064.90, making a total payment of $11064.90. This deducted from the amount due you, make the payment due you for ½ $661.10, check enclosed herewith. This makes now paid to you a total of $14,657.50, or ½ contract price.

"I hope you are getting along all right on these houses,

and that we can soon get them lined up for the final inspection and approval. We have been at them over a year now, and should try to finish them up. I think I may be down that way sometime in the next week."

It will be observed that in this letter specific attention is directed to the adjusted contract price and an adjustment and payment made at that time on the basis of one-half of that amount. Particular attention is directed to the following sentence in the letter: "Here is the way I have this, and if it isn't correct let me know." The accompanying check bore on its face the following: "bal. due on 5 houses N.P. for ½ contract Price." The check was cashed and no protest as to it or as to the letter was made to Brittan.

In opposition to this is the evidence of Delmond J. Phillips already outlined and what amounts to a denial of that part of the testimony of the company which it contends proved the agreement under which the buildings were to be constructed, that is that it was agreed that they were to be constructed for $29,315.

From an examination of the record it becomes apparent that the evidence of the company is sufficient as proof of the agreement contended for by it. Unless it be said that the evidence of the company is incapable of belief in this respect the necessary conclusion on the record is that such evidence preponderates in its favor when weighed against that of the plaintiff.

There is nothing apparent on the face of the record to indicate that this evidence is incapable of belief. Also it is apparent that the trial court accepted this evidence as true.

It appears therefore that in the light of the record and the following expression of this court in Fisher v. Standard Investment Co., 145 Neb. 80, 15 N. W. 2d 355, the necessary conclusion here is that the evidence establishes the agreement pleaded in the answer and that the plaintiff is entitled to recover only that which is found to be due, if anything, under that agreement:

"While the law requires this court, in determining an appeal in an equity action involving questions of fact, to reach an independent conclusion without reference to the findings of the district court, this court will, in determining the weight of the evidence, where there is an irreconcilable conflict therein on a material issue, consider the fact that the trial court observed the witnesses and their manner of testifying."

This conclusion together with the observations on which it is based disposes of the third, fourth, fifth, sixth, and seventh assignments of error.

The remaining assignment relates to the rejection of evidence offered to show that the company obtained increased loans based on representations that costs of labor and material had gone up. Just how such evidence was material to any issuable matter before the court is not apparent. This is especially true since it clearly appears from the testimony of Delmond J. Phillips that the plaintiff did not enter into any agreement or perform any service which depended upon the amount of any loan. The testimony referred to is the following: "Q Now, did you agree to take these houses and build them for 10% more than F. H. A. would loan? A No. I told Mr. Brittan that I couldn't take them on a lump sum basis. Q Did you agree to build them with reference to the F. H. A. loan in any manner? A No. Q Then regardless of how much money was ever borrowed on these houses, that wasn't to enter into what you were to be paid—is that your understanding of it? A No; I was to make a little money out of the job. Q What was borrowed on them wasn't to enter into what you were to be paid? A No."

The trial court did not err in rejecting the evidence offered in this respect by the plaintiff.

There is no objection by any party that the decree is in anywise improper if the position taken by the company is to be sustained.

The errors assigned are without merit, and accordingly the decree of the district court is affirmed.

AFFIRMED.