MAYME NEYLON, APPELLANT AND CROSS-APPELLANT, V. LESLIE D. PARKER, APPELLANT AND CROSS-APPELLEE, IMPLEADED WITH JOHN H. COMSTOCK, ADMINISTRATOR OF THE ESTATE OF AGNES N. PARKER, DECEASED, ET AL., APPELLEES AND CROSS-APPELLEES.

128 N. W. 2d 690

Filed May 29, 1964.   No. 35598.

Joseph J. Cariotto and Louis B. Finkelstein, for appellant Parker.

Winfield M. Elmen and Muffly & Snyder, for appellant Mayme Neylon.

Perry & Perry, for appellees.

Heard before WHITE, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

SPENCER, J.

This is an action to quiet title to real estate, to enforce a contract and agreement, and for equitable relief, instituted by Mayme Neylon against the administrator of the estate of her sister, Agnes N. Parker, deceased, and other named heirs of Agnes N. Parker and the husband of deceased, Leslie D. Parker, from whom Agnes N. Parker had secured a decree of divorce 5 months before her death. Where necessary to refer to the parties herein, Mayme Neylon will be referred to as plaintiff; Leslie D. Parker as Parker; John H. Comstock, administrator, as administrator; and Agnes N. Parker, deceased, as deceased.

The instant case was consolidated for trial in the district court with two others, with the understanding that while the adjudications would be independent, they would be consistent with each other. One of them, case No. 35608, Parker v. Comstock, *post* p. 197, 128 N. W. 2d 696, was an appeal by the administrator from a finding of the county judge that Leslie D. Parker was the surviving husband of the deceased and entitled to statutory allowances and distribution as such. The other, entitled, "Mayme Neylon, plaintiff, claimant, v. John H. Comstock, administrator of the estate of Agnes N. Parker, defendant," was an appeal from the disallowance of

claims filed against the estate in the county court, and was disposed of in the court below. Separate appeals were filed in this court on the other two. They were consolidated here for briefing and for argument, but will be handled separately for decision.

In the instant case, plaintiff's petition alleged that on or about April 25, 1945, plaintiff and her sister made an agreement with each other that upon the death of one, the survivor should become the owner of the property of the other, both real and personal. The petition alleges that each made a deed to her property in favor of the other, describing the property to be conveyed and transferred to the survivor. These were placed for safe-keeping in a safe-deposit box to which each had the same rights of entry. It was further alleged that the agreement provided that upon the death of either, the survivor should place the deed wherein she was the grantee of record; that the deed in which plaintiff is named a grantee has been filed of record; and that she is now the owner of the property.

There is no dispute in the record that each thereafter separately handled her own property, and that the deed of record describes some property which had been conveyed by the deceased several years before her death.

Plaintiff argues that the existence of the contract with her sister was clearly established by the testimony of the various witnesses. The existence of the deeds was clearly established. The existence of a specific contract and the terms thereof must be established largely by the deeds. The only evidence of plaintiff bearing directly on the point of a contract was read into the record by the attorney for the administrator from a deposition of Mayme Neylon. It is as follows: " 'Q- Was there anything said at that time? A- What were we talking about? You just get me all confused. The discussion was on my death she was to have everything I had and on hers I was to have everything she had. Q- That agreement

was made between the two of you? A- That was made between the two of us. Q- Was it reduced to writing? A- Yes. Q- It was written? A- Yes. Q- Do you have the paper on which the writing was made? A- Well, she gave me a quit claim deed to everything she had, just what the writing was made on, and I gave her a deed. Q- Is the deed the only instrument that was signed by each of you? A- Yes. Q- It is your contention that this deed was to be effective in the event of the death of the first of the two of you, is that correct? A- First of the two of us, yes. Q- It wasn't to be effective until one of you had died, is that correct? A-Yes. Q- It was to have no effect until one of you died? A- Until one died. What I had belonged to her at my death and what she had belonged to me. Q- That is the only instrument that was signed? A- We did that on account of the court trouble we had with our estate. We wasn't going to have any more, go back in court. Q- Did you have an attorney prepare those papers? A- No.' "

The only testimony of the other witnesses which would even remotely bear on the point is as follows: William Neylon, a brother of the plaintiff and of the deceased, testified that he was in the plaintiff's home when he first saw the quitclaim deed from deceased to plaintiff, identified as exhibit No. 6. He testified that he had a conversation with the deceased relative to the deed. He was then asked this question: "Will you repeat that conversation for the court, please? A- Well, she come in and laid this down and I picked it up and looked at it and asked her what she was deeding now and she said she was making Mayme a deed to everything she possessed. That is the way I got it. And Mayme come in and we went out and ate dinner. And there was no mention about it one way or the other to me, but Mayme and she talked about it but I don't know — Q- Did you hear any of the conversation she and Mayme had about the deed? A- No."

The testimony of Lulu L. Runge, who lived in an

apartment in the home of the deceased, is as follows: "Q- * * * Do you recall the general substance of the conversation you had with her? * * * A- Yes. Q- Will you repeat that conversation for the court, please? * * * A- When I returned from the lecture on wills I naturally told her about it and she said, well, she wasn't concerned because she had something better than a will— everything was taken care of. Q- Did she state to what she referred, in this particular conversation? A- Yes, she had the quit claim deeds. * * * Q- * * * Did she state to what she referred, in this particular conversation? A- Yes. Q- And what did she state, please? Will you repeat that to the court, please? * * * A- She said she and Mayme had the quit claim deeds which would be superior to a will. Q- Did she state what the effect of the quit claim deeds would be as to the effect of transferring property on death? * * * A- Yes. * * * Q- Will you repeat as nearly as you can recall it what she said in this regard? A- Well, that would be why the deed was preferrable (preferable). Q- Go ahead. Whatever she said I am asking for; anything else you remember. A- She just said it was better than having the will. Q- The arrangement she had with Mayme was better? A- Yes, it was better than a will."

Henrietta S. Beale testified that she talked to the deceased several times about making a will, and that deceased "said it was not necessary for her to make a will because she had it all fixed." She then testified: "Q- Now in any of those conversations did she explain what she meant by 'all fixed'? A- Yes, she told me. She told me exactly what she had done. Q- Will you repeat that, please? A- She had left a quit-claim deed leaving everything she had to her sister Mayme. Q- And did she tell you anything about any quit-claim deed her sister had made? A- She left the quit-claim deed to her sister Mayme Neylon. Q- Did she tell you about the deed Mayme Neylon had left to her. A- Yes. Q- Throughout the years, from when you first mentioned

it in approximately '45, did you have numerous occasions when you had conversations with her regarding wills and what had been done in respect to quit-claim deeds? A- Yes, sir. Q- This was prior to her marriage to Mr. Parker, is that correct? A- Yes, sir. Q- Then during the time she was married to Mr. Parker, did you have conversations with her about—that were in substance the same? A- Yes, sir."

Harry Burback testified as follows: "Q- Repeat the conversation, please, that you started to give. A- Well, she told me she wanted the car title in her name alone and I completed the new application and she continued to say all her property would go to her sister Mayme upon her death and I said, 'Agnes, how can you do that? With a will or how?' She said, 'No, there are two deeds, quit claim, so on my death everything will go to Mayme, and if Mayme dies everything comes to me.' And that is how she mentioned it to me at that time definitely. So we corrected the title and put it in Agnes' name. Q- Now at any time subsequent to that did you have a conversation with Agnes Neylon regarding this deed arrangement you have described to the court? A- No, not—I can't say definitely. I was always under the impression that Mayme would get it."

The trial court found that there was insufficient evidence to show an intention on the part of the deceased to part unconditionally with the quitclaim deed in which the plaintiff is named as grantee, and that there was no delivery. It specifically found the exchange of deeds between the parties and the deed in question to be a nullity and of no force and effect. The trial court denied the plaintiff's claim, and canceled and annulled the deed.

This action, being strictly one in equity, is here for trial de novo. § 25-1925, R. R. S. 1943.

The quitclaim deed from deceased to plaintiff, exhibit No. 6, specifically described the following property: "SE ¼ of Sec. 35, Twp. 12, Range 6, except school site,

Lancaster County, Nebraska. E ½ NE ¼ of Section 2-11-6. Lot 14, west 20 feet of Lot 15, Block 7 2nd Hillsdale addition to Lincoln. (all my interest therein, and houlsehold (sic) furnishings. Lot 136, Irregular Tract NW¼ of Section 6-9-7, 2731 Van Dorn, 'My one half interest therein. Total interest in Original Plat Block 208, Lot 9, known as Elms Apartment, Garages, and fixtures. Any other interest in." It is to be noted that only certain specific personal property is described in the conveyance, to wit: Certain household furnishings, and fixtures in the Elms Apartment. Plaintiff is relying upon the words, "Any other interest in," to cover all other personal property. There is no enlightenment in plaintiff's brief on this point, and we do not so construe them.

The question of delivery is in dispute but is unimportant herein because the evidence is undisputed that there was no intent to pass a present interest by the deeds. The plaintiff testified the deeds were to have no effect until either she or her sister died, and only the deed to the survivor would then be effective.

In Pinkham v. Pinkham, 55 Neb. 729, 76 N. W. 411, we said: "An instrument, although in form a deed, which by its terms was to operate only after the death of the maker or grantor, is testamentary in its character, and not a deed, and passes no present estate in the premises therein described."

The deed being ineffective as a conveyance, the question arises as to whether plaintiff has proved an enforceable contract with the deceased whereby plaintiff was to have all deceased's property at her death. She argues that the deed is a written memorandum of the agreement between them.

Plaintiff relies on Dunlap v. Marnell, 95 Neb. 535, 145 N. W. 1017, which involved a mutual agreement between a husband and wife whereby the survivor would inherit certain real property of the other. In that case, deeds were executed by the husband and wife and de-

posited with a third party with instructions that the deeds were not revocable by either, and that on the death of one the deed to the survivor would be recorded. We held the deeds to be ineffective as conveyances because no present title passed by the instruments.

We there held, however, that the oral contract entered into by the husband and wife, which they attempted to carry out by the execution of the respective conveyances and their delivery to a third party, irrevocable, save by the consent of both parties, constitutes a valid contract in favor of the survivor capable of specific performance under the authority of Brown v. Webster, 90 Neb. 591, 134 N. W. 185, 37 L. R. A. N. S. 1196, which involved an agreement to execute mutual wills.

Assuming the oral agreement to have been fully proved, which we do not decide, the instant transaction is not within the ambit of the rule in Dunlap v. Marnell, *supra*, for several reasons. Plaintiff contends the parties intended to cover all property, both real and personal. The agreement was not irrevocable. The parties had no intent to restrict the control of the other as to her own property. The deeds were intended as a completed testamentary disposition, not to be effective until death, and not as a memorandum of agreement or otherwise. The parties continued to handle and control their respective properties without interference from the other party, and in total disregard of any rights expressed in the purported conveyances. The deeds were not delivered to a third party, but according to plaintiff's petition were placed in a safe-deposit box to which each had access. There is no adequate proof of substantial part performance herein, giving rise to equities. The subsequent conduct of the parties could be construed to be an abandonment of the agreement if one was proved. The Elms Apartment, described in the conveyance executed by the deceased, was sold and the proceeds invested in securities and no accounting was made, requested, or required.

The deeds at most were no more than an ineffective testamentary disposition. They were intended as a substitute for a will, and as the evidence clearly shows, were an attempt to avoid an estate proceeding. In passing, we might observe that the deceased was a single woman in 1945 when the quitclaim deed was signed. She was married on May 29, 1946, and remained married until a divorce decree was signed 5 months before her death July 6, 1961. There was a substantial change of family circumstances by which legal rights accrued, which might cast doubt on the validity of the transaction even if it had been executed in full conformity with the rule in Dunlap v. Marnell, *supra,* a point it is not necessary for us to decide herein.

None of the equities present in Brown v. Webster, *supra,* and Dunlap v. Marnell, *supra,* are present herein. The statutes of Nebraska make adequate provision for the testamentary disposition of property with adequate safeguards to provide for the rights of all concerned. Courts are reluctant to nullify the safeguards thus provided by approving other methods, and do so only where the equities demand it. One who attempts to use some other form of testamentary disposition must bring himself strictly within the narrow limits of the applicable law. Courts will specifically perform testamentary agreements not embraced within the provisions of our statutes only when the equities are substantial and the evidence is clear, satisfactory, and unequivocal. Those elements are not present herein. To specifically perform the alleged agreement herein would be to make a mockery of our statutory provisions on wills.

Plaintiff raises a question as to the right of the administrator to take possession of the real property of the estate and to collect the rents. Section 30-406, R. R. S. 1943, confers the right of possession of all real as well as personal property on the executor or administrator until the estate has been settled. As pointed out in Hahn v. Verret, 143 Neb. 820, 11 N. W. 2d 551, the

right of the administrator may be defeated if rents are not needed to pay debts, costs, and expenses, and that rents subsequent to the death of deceased belong to the heirs unless so needed. Here, however, there is litigation involving the rights of a husband to inherit, and it is necessary for the administrator to collect rents to protect the interests of the estate until the determination of heirship is made. The trial court did not err in finding that the administrator was entitled to collect said rents. If they are not needed for the purpose of paying debts, costs, and expenses, this may be handled on an accounting in county court.

In case No. 35608, Parker v. Comstock, *supra*, we determined that Leslie D. Parker was the surviving husband of Agnes N. Parker and entitled to statutory allowances and a distributive share as such but not to rights of homestead.

We determine that the plaintiff has failed to prove a valid and enforceable contract with the deceased for the conveyance of the real and personal property of the first to die to the survivor, which point was not specifically covered in the judgment of the trial court.

We reverse the portion of the judgment of the trial court which denies the claim of Leslie D. Parker as the surviving husband of Agnes N. Parker, except as to the claim of a homestead interest, which reversal includes that portion of the judgment of the trial court assigning property to other heirs, to the exclusion of Leslie D. Parker. We determine that in addition to the statutory allowances to which Leslie D. Parker is entitled, he inherits a one-half interest in all of the rest of the real and personal property of which Agnes N. Parker died seized, subject only to debts, costs, and expenses of administration.

In all other respects, we affirm the judgment of the trial court.

We therefore remand this cause to the trial court with

directions to enter a judgment in conformity with this opinion.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED WITH DIRECTIONS.