ETHEL M. HANSEN ET AL., APPELLANTS, IMPLEADED WITH LLOYD HANSEN ET AL., APPELLEES, V. FRANCIS E. LADEN-BURGER ET AL., APPELLEES, IMPLEADED WITH MARY FRANCES JOHNSON ET AL., APPELLANTS.

134 N. W. 2d 249

Filed April 2, 1965. No. 35869.

Kerrigan, Line & Martin and Sidner, Lee, Gunderson & Svoboda, for appellants.

Spear, Lamme & Simmons, for appellees.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SPENCER, J.

This is an action to invalidate a bill of sale to a bulk

petroleum plant and conveyances to five separate tracts of real estate in which Arthur J. Ladenburger, now deceased, is grantor and his son Thomas A. Ladenburger is grantee. The action is brought by Ethel M. Hansen and Leo J. Ladenburger, daughter and son of the grantor, and their respective spouses. They will hereinafter be referred to as plaintiffs or as Ethel or Leo as the case may require. Arthur J. Ladenburger, deceased, will be referred to hereinafter as the father.

The defendants are Thomas A. Ladenburger and Francis E. Ladenburger, his brother, and their spouses; Mary Frances Johnson and Betty June Baker, granddaughters of the grantor, and their spouses; and Leo J. Ladenburger, administrator of the estate of Arthur J. Ladenburger, deceased. Mary Frances Johnson and Betty June Baker and their respective spouses filed voluntary appearances and joined in the prayer of the plaintiffs' petition. The defendants will hereinafter be referred to by their given names.

Plaintiffs allege the conveyances are invalid because they were not delivered to Thomas during the lifetime of the father with the intent to pass title during such lifetime; that said instruments were testamentary in character and were not proper testamentary dispositions; and that there was no delivery by the grantor. Previously Leo as administrator had filed an action in the same court for the same purpose. That action included all of the conveyances questioned herein as well as a bill of sale to a bulk plant at Morse Bluff and deeds to four additional parcels of real estate. A decree was entered therein for Thomas after a hearing on the merits. After a motion for a new trial was overruled, a motion was filed in the name of Leo J. Ladenburger stating: "Comes now Leo J. Ladenburger and shows to the court that he is no longer administrator of the estate of Arthur J. Ladenburger, deceased and prays that the court substitute him, as an individual, as plaintiff in the above entitled action." This was signed "LEO J. LADENBURGER,

Plaintiff." An appeal was perfected to this court and was dismissed on motion. Previous to this dismissal, the plaintiff filed a certificate from the county judge of Saunders County stating that as of May 2, 1963, Leo J. Ladenburger was still adminstrator of the father's estate. The mandate of this court is dated June 5, 1963. The present action was filed on July 10, 1963.

There is no dispute as to the facts. The father died intestate July 27, 1959. He had owned two bulk plants on leased ground, one at Bruno, Nebraska, and the other at Morse Bluff, Nebraska. On April 30, 1958, he executed bills of sale for both bulk plants to Thomas, and handed them to Thomas with instructions to put them in his own safe at home and file them after the father's death. This Thomas did. Thomas had worked in the business with the father since 1942, a part of the early period without salary. The testimony is undisputed that on several occasions the father had promised Thomas the business. About 5 years before the father's death, Thomas assumed full management and control of the Morse Bluff plant, paid the bills, and retained all of the profit. That plant was involved in the previous litigation but is not involved herein. As to the Bruno plant, which is the one involved herein, the evidence is undisputed that Thomas was consulted as to its operation, helped with the paper work, but received no income of any nature from its operation until the father's death.

In November 1954, the father had deeds prepared for four separate tracts, one of which included the home occupied by Thomas. These listed Thomas as the grantee and were handed to him in the latter part of 1956 or early 1957, with instructions to take them home, put them in his safe, and file them after the father's death, with the option of filing the deed to the home place before the father's death if Thomas desired. Thomas was to use the properties and was expected to pay taxes on them, which he did. These four properties were in-

volved in the previous litigation but are not included in this action.

The deeds to the five separate properties involved herein were dated from 1954 to 1959, and were handed to Thomas on different occasions after the four referred to above. They also listed Thomas as grantee, and were handed to him with instructions that they were to be kept in his own safe but were not to be filed until after the father's death. They were kept in Thomas' safe, to which the father did not have access, until they were filed shortly after the father's death.

The father also, but subsequent to the deeds to Thomas, gave him deeds naming the plaintiffs herein as grantees, with instructions to put them in his safe and to deliver the deeds to the named grantees to be recorded after his death. These deeds were delivered to the grantees by Thomas after the father's death. Those properties were not involved in the previous litigation and are not involved herein.

Plaintiffs concede the validity of the conveyances to Thomas embraced in the previous action which are not included in this one, and attempt to show that the differing treatment of the conveyances indicates that the ones questioned herein were intended to be testamentary and are therefore void. Plaintiffs argue that when the father intended to pass a present interest to Thomas, he permitted him to occupy the premises and required him to pay taxes. Thomas did not occupy or pay taxes on any of the properties included herein until after his father's death. One of the deeds herein also provided for the payment of an annuity to the grantor. Thomas testified he did not pay the annuity because his father collected the rent from the property and never asked for the annuity.

Thomas also testified that as to one of the properties involved, which is covered by the last deed to him dated May 6, 1959, he had previously held a deed from the father to Leo covering this same property, but that 3 or

4 months before the present deed the old one was returned to the father who substituted a $5,000 savings and loan certificate, which had previously carried Thomas' name, for it. This certificate was delivered to Leo after the father's death. The testimony on this transaction is as follows: "Q That Savings & Loan account certificate had previously been payable to you, had it not? A Yes. Q So your father exchanged the Savings & Loan certificate or switched it between you and Leo, substituting the Savings & Loan certificate for the land, is that correct? A Yes. Q And the prior deed to Leo had been received by you, before it was destroyed, just like the rest of these deeds? A It must have been, yes. Q And he told you to put it in your safe and keep it and record it after his death? A Yes — no, I wasn't to record it; I was to pass it to Leo. Q You were to pass it to Leo after your father's death just like the rest of the deeds, is that correct? A I was to record mine and pass the other ones out. There was a difference." Plaintiffs urge that this transaction evidenced the intention of the father to retain control over the deeds and to reserve the right to recall them. There is no other evidence of any nature that there was any such understanding as to any of the conveyances questioned herein.

Plaintiffs' sole authority for their position is Neylon v. Parker, 177 Neb. 187, 128 N. W. 2d 690. We submit that there is no similarity between the facts in that case and this one. The evidence in Neylon v. Parker, *supra,* was conclusive that there was no intent to pass a present interest in property. Two quit claim deeds were executed with the understanding that only one of them would be effective, depending on subsequent developments. In that case the grantee was using the deed to attempt to prove the existence of a contract to convey.

This case is much more analogous to Cerveny v. Cerveny, 154 Neb. 1, 46 N. W. 2d 632, in which a mother executed deeds to certain property to her son and to

other children and put the deeds in her own safe to which the son had access. The mother wrote out a statement in which she said each of the grantees should " 'put his on record after my death * * *.' " After the son's death, this paper and the deed to the son were found by his wife among the son's effects. She recorded the deed. The mother subsequently brought an action against the wife to cancel the deed, claiming there had never been a delivery to the son. In that case we quieted title to the property in the daughter-in-law, subject to a life estate in the mother.

If anything, the facts herein present a stronger case than those in Cerveny v. Cerveny, *supra*. This case is not so dependent on presumptions, but indicates a situation where a grantor intended to convey property retaining a life estate and requested that the deeds be held off record to accomplish that purpose. We have had many cases covering the rules to be applied to the facts herein, none of which are referred to in plaintiffs' brief.

The possession of a deed by the grantee, in the absence of opposing circumstances, is prima facie evidence of delivery and the burden of proof is on him who disputes this presumption. See Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183.

A deed delivered to grantee in grantor's lifetime is operative, although enjoyment of the estate conveyed is postponed until grantor's death, as a present estate or interest is transferred by such delivery. See Kerns v. Kerns, 157 Neb. 786, 61 N. W. 2d 405.

In a suit to set aside a deed to defendant for want of delivery, plaintiffs have the burden of proving nondelivery of the deed and producing evidence to overcome the presumption of delivery due to defendant's possession of the deed. See Cerveny v. Cerveny, 154 Neb. 1, 46 N. W. 2d 632.

This presumption is not conclusive but it raises a strong implication which can only be overcome by clear

and satisfactory proof.  See Cain v. Killian, 156 Neb. 132, 54 N. W. 2d 368.

This court has from an early date consistently held that delivery is largely a question of intent to be determined from the facts and circumstances of the given case. See Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183.

This case was tried in the district court for Saunders County, March 19, 1964.  A submission was taken and the plaintiffs were given 10 days to file a brief and the defendants 10 days thereafter to file an answer brief. On April 10, 1964, and prior to a decision Leo filed a motion to amend the petition, alleging that the testimony at the trial indicated that one of the tracts involved had on a previous occasion been conveyed to him, and if the court should find there had been an effective delivery during the lifetime of the father, then the court must find the prior deed effectively conveyed the interest of the father to Leo to the exclusion of the interest of Thomas arising from the second deed.  Thomas objected to the motion for leave to amend on the grounds that Leo was estopped to claim title to the tract as against him.  The trial court denied leave to amend and Leo gave separate notice of appeal and has filed a separate brief on this issue urging abuse of discretion.

Ignoring the question of res judicata as to Leo, which was raised at several stages herein but which we do not discuss because it would not be applicable to Ethel, the trial court did not abuse its discretion in refusing to amend after submission of the case.  The testimony in question did not come as a surprise to Leo.  The bill of exceptions in the previous case, which was an exhibit herein, shows that this transaction was fully described in the previous trial.  Further, Leo has accepted and has continued to retain the $5,000 building and loan certificate which was changed from Thomas to Leo as a part of the questioned transaction.  Even if Leo could amend, the doctrine of equitable estoppel may be applicable. See Wenzel v. Wenzel, 174 Neb. 61, 115 N. W. 2d 788.

For the reasons given, the judgment of the trial court should be and hereby is affirmed.

AFFIRMED.