RALPH S. MOSELEY, SPECIAL ADMINISTRATOR OF THE ESTATE
OF OTTO W. MILLER, DECEASED, ET AL., APPELLEES, V. MARY
S. ZIEG ET AL., APPELLANTS.

146 N. W. 2d 72

Filed November 4, 1966. No. 36286.

Joseph J. Cariotto, for appellants.

Kier, Cobb & Luedtke, for appellees.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and NEWTON, District Judge.

BROWER, J.

The appellees, Ralph S. Moseley as special administrator of the estate of Otto W. Miller, deceased, and Seth E. Cole, Sr., Robert A. Cole, Sr., Mamie Whitmarsh, and Margaret A. Hostreiter, the devisees and legatees under the will of said deceased, as plaintiffs, brought this action in the district court for Lancaster County against the defendants and appellants Mary S. Zieg and Henry G. Zieg, her husband, to cancel and declare void a deed conveying a lot and residence in Lincoln, Nebraska, and "All household goods contained therein," to Mary S. Zieg, sometimes referred to herein as Mrs. Zieg, and to obtain possession of the property and enjoin defendants

from interfering therewith or collecting the rents. During the trial Ralph S. Moseley, as executor of the estate of Otto W. Miller, was substituted as a party plaintiff for the special administrator.

A trial to the court resulted in a judgment finding that the grantor never delivered the deed in his lifetime to anyone, but retained the same in his own personal possession, and granting the plaintiffs the relief prayed for.

Defendants appeal from an order overruling their motion for a new trial, assigning as errors that the finding and judgment are contrary to the law and not sustained by the evidence which they contend support a finding for defendants.

During the period pertinent to this decision prior to his death, which occurred in a hospital at 2 a.m., on March 18, 1964, Otto W. Miller, hereafter called Miller, the grantor in the deed, had occupied the premises so conveyed as his home. He rented an upstairs apartment and rooms to students in the basement. Miller was an attorney and at an earlier period in his life had practiced law in Lincoln, Nebraska, about 2 years. Later his occupation concerned the manufacture of farm machinery. He had married rather late in life and his wife had predeceased him. By a prior marriage the wife had the four children hitherto designated as his devisees and legatees. The will was executed May 4, 1960. On November 9, 1961, Miller had his attorney, Ralph S. Moseley, prepare the deed in question, conveying the premises mentioned to the defendant Mrs. Zieg. The deed was witnessed by Moseley and was acknowledged by Miller before Ollie R. McMeen, a lady and notary public in Moseley's office. It was recorded by Mrs. Zieg at 11:55 a.m., on March 18, 1964. Mrs. Zieg lived across the street from the Miller home.

Harold Foster, a student at the University of Nebraska and a tenant of the deceased Miller; testified with respect to conversations had alone with the latter on an evening near the middle of February 1964. The witness stated

Miller said he was in love with Mrs. Zieg and was going to see she got the property after he died. Miller said he had made a new will within the past year that would give her the property and that she had been given a deed to the property. He said some of his stepchildren had borrowed money from him and had not repaid it or reimbursed him for certain bills paid by him for them, and his stepchildren would not get his property. On cross-examination, Foster stated he had paid the March rent to Miller after the conversation.

Mrs. Lillith Gluesing, the occupant of Miller's upstairs apartment, testified by deposition. She saw Miller practically every day and many times saw Miller cross over the street to speak with Mrs. Zieg. Miller had told her he would marry Mrs. Zieg if she were single and Mrs. Zieg had stated to her that if single she would marry Miller. In July or August 1963, he said, " 'This house belongs to Mary. I have taken care of that,' something about all the paper work has been done. * * * 'I have been to see my lawyer, all the paper work is signed and it has been delivered.' " On cross-examination, she stated she had always paid the rent to Miller up to his death, including that due in March 1964, but thereafter to Mrs. Zieg. On many occasions he had mentioned the house belonged to Mrs. Zieg and seemed happy when he said it.

William H. Owen, a son of Mrs. Zieg, testified that on August 14, 1963, Miller called him by telephone while the witness was at his mother's house. Miller asked him to come to his home. On going there, Miller stated he had been to see his lawyer the day before, spending most of the morning and that he had taken the deed to his house over to "my mother's house" the day before, after he had come home. He stated John Steinacher " 'knows all about this.' " " 'John will take your mother and have the deed recorded on my death.' " " 'Be sure that they do it immediately; don't wait one day.' "

Ralph S. Moseley, the attorney, testified for plaintiffs. He stated Miller came to his office and requested

him to prepare the deed on November 9, 1961. It was prepared, signed, and witnessed, and acknowledged by Miller there at that time. The witness told Miller that he would have to give it to Mrs. Zieg to make good delivery, but he knew Miller was an attorney. Miller stated the deed would not be effective until after his death. He testified that after Miller's death, Mrs. Zieg contacted him about the deed and she and Steinacher went with him to the safe deposit box in the basement of the National Bank of Commerce where Mrs. Zieg signed for admission to the box. She had a key that would permit her to open it. He testified that in the box was the deed in question which was in an old envelope on which was written " 'To be filed at my death.' " An inventory of the contents of the box was made by Moseley at the time. It listed a small amount of corporate stock and a considerable number of government bonds, $11,000 of which were payable to Miller alone and $15,000 made payable to him with $3,000 thereof payable on death to one of his stepchildren and $4,000 to each of the other three stepchildren. The inventory which is in evidence included the abstract of title to the lot in question but not the deed. It was signed by the three persons present. The deed was given by him to Mrs. Zieg at that time and he advised her to put revenue stamps thereon and to record it, and told the defendant the place was then hers.

John J. Steinacher, a witness for the defendants and a neighbor of Miller, who as a carpenter did the repair work for him in and about his home, testified that in August 1963, Miller said, "he gave—that Mary gets the house when he is gone." Later he related another conversation between him and Miller: "And so I went in the kitchen and he says, 'Well, I have got everything fixed.' I says, 'What do you mean?' And he says, 'I have got my obituary written,' and he says, 'I gave the deed to Mary, and I made' or 'changed my Will.' I don't remember whether he said he made or changed

his Will, at the time he told me he gave the deed to Mary. * * * Q. What did he say in that regard? A. He asked me if I'd do him a favor; if something happened to him, would I take Mary to the box and get the deed and have it put on record. I said, 'O.k., as long as it don't cost me anything.'" On direct examination he testified of the events after Miller's death as follows: "Q. So that was the next day, the date following the date when they took Mr. Miller to the hospital? A. After he died, because he says, 'When something happens, to me, take her to the Courthouse with that deed and have it recorded.' Q. Now, did you go over—then in compliance with that request, did you take Mrs. Zieg to the safety deposit box? A. I did. Q. Do you know whether she had a key to get in? A. Oh, yes. Q. Could you tell us whether you went, or she went in the deposit box and got the deed out? A. She went alone first. I stayed in the back room. I went right in the place where you sign in, and she got the deed and then we went up to Mr. Moseley's office. Q. By the place where you sign in, are you testifying you were in the National Bank of Commerce in Lincoln? A. That's right. Q. And you were in the back portion of the bank where the safety deposit boxes are located? A. That's right. Q. Now, did you see Mrs. Zieg take the deed out of the box? A. No, I didn't. Q. Do you know whether she had the deed with her when she came out? A. No. All she had was just a small purse. Q. Then after she had been in the box, did she have the deed? A. Yes. Q. And did you see the deed? A. Yes. Q. What did you do after she had gotten the deed out of the box? A. We went to Mr. Moseley's office." He subsequently states that Moseley later .went with him and Mrs. Zieg to the box at the National Bank of Commerce, and on direct examination he testified concerning this incident: "Q. Well, did you take anything out of the box when Mr. Moseley was there? A. No, not that I know of. Q. In other words, are you telling the Court you didn't see any

papers or documents relieved from the safety deposit box? A. No, but Mary had a deed with her at all times. That wasn't in the box. She had that already. Q. What did you do after you and Mary Zieg and Mr. Moseley were in the safety deposit box? A. Then we went upstairs, and Mr. Moseley says, 'You can buy the stamps here in the bank.' Q. What happened, did you buy the stamps there in the bank? A. Yes." On cross-examination, the witness testified: "Q. Your testimony, Mr. Steinacher, is not clear to me. You say you and Mrs. Zeig (sic) went down to the safety deposit box at the National Bank of Commerce to get the deed, and yet now you are telling the Court she had the deed all along? A. That, I don't know. I never paid enough attention really. I had no axes to grind." On redirect examination, he said he first saw the deed at Moseley's office and told of the second visit to the box at which time Moseley made the inventory which he signed.

Ted Thompson, a vice president of the National Bank of Commerce, was a witness for the plaintiffs. He identified a rental contract for the safe deposit box between the bank and O. W. Miller and Mary Owen Zieg with a record of entries attached, which is in evidence. The contract is dated March 2, 1961. The record of entries shows O. W. Miller signed the entry sheet only on November 9, 1961, and November 12, 1963, and that Mary Owen Zieg signed it on March 18, 1964, at both 10 a.m., and 10:43 a.m., and on March 20, 1964, and several times thereafter.

This court, in the case of Lewis v. Marker, 145 Neb. 763, 18 N. W. 2d 210, laid down the following rules in its syllabi which we deem applicable to the case before us: "It is essential to the validity of a deed that there be a delivery and the burden of proof rests upon the party asserting delivery to establish it by a preponderance of the evidence.

"To constitute a valid delivery of a deed there must be an intent on the part of the grantor that the deed

shall operate as a muniment of title to take effect presently.

"Where an unrecorded deed is found, after grantor's decease, in a safety deposit box to which the grantee had a right of access as a joint lessee thereof with such grantor, this of itself will not sustain a finding that the deed was delivered when the grantor retained control of the property, collected the rents, made repairs and paid taxes thereon as he did before the date of the purported delivery." See, also, Owens v. Reed, 141 Neb. 796, 4 N. W. 2d 914, cited in Lewis v. Marker, *supra*.

The defendants cite the case of Cerveny v. Cerveny, 154 Neb. 1, 46 N. W. 2d 632, from which defendants maintain the burden to set aside a deed for want of delivery is upon the plaintiffs who seek to set it aside. In the Cerveny case the deed was seen in the possession of the grantee during his lifetime and the life of the grantor and found in the grantee's effects on his death. Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183, was a case where the deeds were in possession of the grantee in the grantor's lifetime, and this court held: "The possession of a deed by the grantee, in the absence of opposing circumstances, is prima facie evidence of delivery, and the burden of proof is on him who disputes this presumption." In the Kellner case the plaintiffs who sought to set aside the deeds, cited Lewis v. Marker, *supra*, and other cases of similar import, contending the rules in those cases should apply. This court in its discussion distinguished the two situations, stating: "The essential fact to render delivery effectual always is that the deed itself has left the control of the grantor who has reserved no right to recall it, and it has passed to the grantee. The deeds in the instant case, and there is no evidence to the contrary, were in the possession of the grantee, Laura B. Whaley, prior to the time of the grantor's death, and at the time of his death. The distinction between the cited cases and the instant case is therefore obvious."

In the present case we think the defendants have failed to show that the deed was in the possession of the defendant Mary S. Zieg during her lifetime. Although the testimony of attorney Moseley and the witness Steinacher is not in complete harmony, it plainly appears that the latter took Mrs. Zieg to the bank that she procure the deed from the safe deposit box. Parts of Steinacher's testimony clearly indicates she got it there. They went together to the safe deposit box of Miller after his death pursuant to the instruction given by Miller in his lifetime. It stretches credulity to believe that if Mrs. Zieg carried the deed with her before arriving at the bank she would not have told the person she accompanied that she already had it and exhibited it to him. It is of some significance also that William H. Owen on being informed by Miller that he had taken the deed to his mother the day before did not thereafter observe it in her possession. Steinacher's testimony, from which defendants claim it might be inferred she had it at all times, is inconsistent and unsatisfactory. We think it must be conceded the deed was procured from the joint safe deposit box. If so, it was placed there by Miller in his lifetime because he was the only person who had access to it before his death. The presumption of delivery of a deed found in the possession of a grantee in the grantor's lifetime does not obtain in the present case. The burden here was on the defendants to prove delivery.

The defendants argue that the evidence in any event is sufficient to show delivery, that manual tradition or physical possesson by the grantee or delivery to a third person for the grantee is not necessary. They contend the declarations of the grantor shown by the record is sufficient. It is unnecessary to review the numerous cases cited by defendants in practically all of which the physical possession of the deed by the grantee at some time or that of someone holding it for him was a controlling factor. The evidence here is susceptible of a different interpretation than urged by the defendants.

When the grantor executed the deed and was told by his lawyer that delivery to the grantee was necessary, he stated that it was to take effect upon his death. He placed it in the safe deposit box and his instructions indicate that he intended to keep control of it until his death. He remained free to destroy it or make other disposition of the property before his death. He remained in possession of the premises, collected the rents, and the repairs were made for him. His actions indicate he desired to remain the owner of the property. The evidence fails to show an intent on the part of the grantor that the deed should operate as a muniment of title to take effect presently. The present case is similar to that of Lewis v. Marker, *supra,* except there is no evidence with respect to who paid the taxes on the premises in question.

We conclude the defendants have not sustained the burden of proof to show the delivery of the deed in question.

The judgment of the trial court was without error and should be and is affirmed.

AFFIRMED.