HERMAN HAAS ET AL., APPELLANTS, V. GUSTAVE WELLNER, ET AL., APPELLEES.

FILED NOVEMBER 14, 1911. No. 17,049.

Deeds: DELIVERY. The delivery of a deed by the grantor to a third person to be delivered to the grantee will be equivalent to a delivery to the grantee, if the existing equities required such delivery and it is apparent that the grantor so intended it.

APPEAL from the district court for Cheyenne county: HANSON M. GRIMES, JUDGE. *Affirmed.*

*Wilcox & Halligan* and *O. A. Torgerson*, for appellants.

*W. P. Miles* and *J. L. McIntosh, contra.*

REESE, C. J.

This is an action to partition section 11, in township 16 north, of range 51 west, in Cheyenne county. The suit is prosecuted by heirs at law of Joseph Haas, late of the city of Nauvoo, in the state of Illinois, who died testate September 20, 1898. His will was executed on the 1st day of August, 1876, by which he devised and bequeathed to his wife, Catherine Haas, all his real estate and personal property during her natural life, without further specification or identification. The will was admitted to probate in Hancock county, in that state, on the 17th day of October, 1898. Joseph and Catherine had each been married prior to their intermarriage, and each had children living. Other children were born to them after their marriage. The children of Joseph Haas, born before and after his marriage to Catherine, are the plaintiffs in this case. Gustave Wellner, one of the defendants, is the son of Catherine, born before her marriage to Joseph, and the defendant "Mrs. Gustave Wellner," known in the record as "Belle Wellner," is his wife. There are other parties to the suit, but they need not be here referred to. In the year 1885, and a long time prior to the death of Joseph Haas, the defendant Gustave Wellner purchased the east half of section 3, township 16, range 51, and the north half of section 11, in the same township and range, from the Union Pacific Railroad Company, under the usual ten-year instalment contract. Belle Wellner, his wife, with her own means and under a like contract, purchased the south half of said section 11. They met the payments as they matured for some time, but unfavorable climatic and financial conditions rendered it impossible for them to keep up the payments, and they assigned their contracts to Joseph Haas, who completed the payments and received a deed of conveyance from the rail-

14

road company. After the completion of the payments, but before receiving a deed, Joseph Haas and wife, Catherine, executed to defendant Gustave Wellner a bond for a deed to the north half, and to Belle Wellner a similar bond for the south half, of said section 11. The bonds each provided for the payment of $633 by the obligees on or before the 1st day of May, 1895. They were executed on the 5th day of March, 1889. The east half of section 3 is not referred to in the bonds. It appears that in the early spring of 1893 defendant Gustave Wellner wrote Joseph to meet him in Lincoln at a time named, when he would pay the amount due Haas and receive the deed of conveyance. On the 21st day of March of that year, and before leaving for Lincoln, Joseph Haas and wife, Catherine, made and acknowledged a deed to Gustave of all of said section 11, and Haas brought it with him to Lincoln for delivery upon the receipt of the payments due. Gustave failed to meet him in Lincoln, and he returned home in an angry mood, and declared that, if Gustave should desire to redeem the land by paying the amount due, he could come to Nauvoo to do so. The deed was laid aside, but never destroyed. Later he gave the deed to his wife, the mother of Gustave, and directed her to give it to Gustave, or to Belle, if she should come to Nauvoo. Belle did not go to Nauvoo, and the deed appears to have been forgotten by Catherine, who was then in advanced old age. The proof of the giving of the deed to Catherine and the instruction to her to give it to the grantee, or his wife, depends upon the testimony of Catherine, whose deposition was taken when she was 83 years of age, somewhat advanced in senility, and possessing but indifferent knowledge of the English language. Her memory and other faculties appear to have been impaired to a considerable extent. After the death of Joseph and the appointment of Catherine as executrix, she inventoried this land as a part of the assets of the estate of Joseph, and at that time the deed was seen among the papers of the estate. Later, she having only

a life estate in the land, as she supposed, and it being un-productive, she made a quitclaim deed thereof to the heirs of Joseph Haas. During the lifetime of Joseph Haas, defendants Gustave and Belle Wellner assigned their bonds to S. C. Ingraham, and by their deed con-veyed to him all of section 11, and he subsequently made a similar transfer to A. L. Green. These instruments having been placed of record, Joseph Haas instituted a suit in the district court for Cheyenne county to remove the cloud thereby cast upon his title. That suit appears to have been adjusted, and his title was quieted by con-veyances. It appears that that suit was to some extent under the direction of defendant Gustave, and the costs were paid by him. Louis Haas, one of the sons of Joseph Haas, died, and Gustave purchased the interest which he was supposed to own in the land (being one-eighth) of his heirs, and his title to that interest is conceded by plaintiffs. The title to the east half of section 3 is not involved in this suit. In the year 1906 defendant Gustave Wellner was in Nauvoo, when he and his brother were looking through a lot of discarded papers which had been left in a garret of the former home of Joseph and Catherine Haas, when the deed to Gustave of section 11, executed in 1893 by Joseph and Catherine, was found. This was the first knowledge he had of its existence. He and his brother took the deed to their mother, Catherine, and inquired of her what it meant, etc. She took it and examined it carefully. Then, holding up her hands, de-clared that she had forgotten all about it; that it had been given to her by Joseph in his lifetime for Gustave, with instructions to give it to him, which she then did, and Gustave caused it to be recorded in Cheyenne county. This suit is brought by the heirs upon the theory that the deed of 1893 was never delivered to Gustave by Joseph Haas, nor by any one for him, and that it con-veyed no title; that by the conveyance of Gustave and Belle to Ingraham they had divested themselves of all interest in the property.

Some correspondence between Joseph Haas and Gustave is shown in the abstract. The letters from Joseph were in the German language; those from Gustave in broken English. At one time, the date not given, but some years before the trial, defendant received a letter from Joseph Haas written in the German language, the translation of which was procured by a Mr. Solomon. The letter had been lost, and could not be introduced in evidence upon the trial, but Mr. Solomon testified that he had read it so often he knew it "nearly by heart;" that in that letter "Mr. Haas made a proposition to Gustave Wellner. He said he owed him $1,100, and, if he turned over section 3 to him, he should have section 11 and get a receipt for the $1,100 besides." The letter is described as being in the handwriting of Joseph Haas and written with red ink. A Mr. Gates testified that he was present on the occasion when Mr. Solomon translated the letter described by Solomon; that he could speak the German language, and he and defendant "tried to read the letter, tried to make it out by ourselves," when Solomon came along, and he being proficient in the use of the German language was called in and translated the letter; that it contained some reference to some land, but witness could not remember the numbers, nor anything further, except that "it was some land transaction between the two," Joseph and Gustave. Defendant Gustave testified to an agreement between himself and Joseph Haas by which he was to surrender to Joseph the east half of section 3, and he and his wife were to have section 11; that in the purchase of the whole section and a half he and his wife, Belle, paid something like $3,200, and Joseph had paid $1,100, and the matter was adjusted by the division of the land, above indicated; that he had sought to redeem the whole section and a half, but, being unable to do so, he had surrendered the half section in section 3, and accepted section 11, thus canceling the indebtedness to Joseph for the money he had advanced. Some force is given to this contention by reason of the

execution of the deed of 1893 conveying section 11 alone and the retention of the land in section 3 by Joseph Haas. The parties to this transaction were all of German nationality, unacquainted with the usual formalities of real estate transactions, and much appears to have been left to memory.

The cause was tried to the district court, which resulted in a finding and judgment in favor of defendants Gustave and Belle Wellner that they were the owners of said section 11, and that plaintiffs had no interest therein. Judgment of dismissal of plaintiffs' petition and quieting the title of defendants was entered. Plaintiffs appeal.

It must be conceded that the evidence is not so clear and decisive in many particulars as could be desired, but, from as careful an examination and consideration as we are able to give it, we are led to the conclusion that the material facts are substantially as above stated.

It is contended by plaintiffs that the evidence does not show a delivery of the deed of 1893, and, as delivery is necessary to pass title, the deed is therefore of no validity; that, even if Catherine Haas was made the agent of her husband, Joseph, to make the delivery, as alleged in defendants' answer, the death of Joseph terminated that agency, and there could be no such delivery thereafter as would pass title. It may be conceded that such is the general rule upon both propositions, and yet, under the peculiar circumstances of this case, as disclosed from the evidence, we are of the opinion that it should not be applied here. Defendant Gustave was the stepson of Joseph Haas. He had been reared in the family and served his step-father until he was 23 years of age. Their relations appear to have been much the same as between father and son. Gustave and Belle had purchased the whole of the land and made a large number of the payments as they matured. We can discover no purpose on the part of Joseph Haas to deprive defendants of the money they had put into the purchase of the land. The person to whom he gave the deed for defendant was defendant's

mother, and from her testimony, unsatisfactory as it may be, we think it more than probable that he considered the delivery to her the equivalent of a delivery to her son, or to the son's wife, should she come to Nauvoo. It sufficiently appears that, from motives of peace perhaps, he requested her to say nothing about the deed to the other children until later on, to our mind excluding the idea that he considered he had further dominion over it. The fact that Mrs. Haas should forget the transaction and omit to send the deed to the defendant is not surprising, nor that the presence of the deed in the papers of the estate failed to recall the matter to her memory, when we consider her age and almost absolute absence of knowledge of business affairs. In respect to the delivery, there appears to be a distinction between this case and those cited by plaintiffs. There also appears to be an element of equity in the case which should not be overlooked. If it is true, as suggested by the evidence, that Joseph Haas withheld and accepted the east half of section 3 as full compensation for the money advanced by him, a strong circumstance is added in favor of the contention that the delivery of the deed to defendant's mother was intended as a delivery to defendant, and neither he nor his heirs could successfully question defendant's title thereafter.

As we view the case upon the facts, which though somewhat dimly set forth in the record, we are persuaded that no serious question of law is involved, and the cases cited will not be noticed.

The judgment of the district court is

AFFIRMED.

ROSE, J., dissenting.

I dissent for the reason that in my opinion the evidence is insufficient to show a delivery of the deed dated March 21, 1893, in which Gustave Wellner is named as grantee.