DONNA JANE MOHR DELONG, APPELLANT, V. DON O. MOHR, JR., ET AL., APPELLEES.

136 N. W. 2d 443

Filed July 23, 1965. No. 35942.

Verzani, Beck & Scoville and Mark J. Ryan, for appellant.

Frederick M. Deutsch, William I. Hagen, James P. Monen, James F. Peterson, E. J. McCarthy, and Harry N. Larson, for appellees.

Heard before WHITE, C. J., CARTER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and WESTERMARK, District Judge.

WHITE, C. J.

Two actions in equity between the parties were consolidated for trial. The sole question involved concerns the validity of the delivery of a warranty deed and a bill of sale executed by Don O. Mohr, Sr., the father, to Don O. Mohr, Jr., his son. The district court held that there was a valid delivery of both instruments, quieted title in Don O. Mohr, Jr., and dismissed plaintiff's petition in the original case and her cross-petition in the second case brought by Don O. Mohr, Jr. Plaintiff appeals. We affirm the judgment of the district court.

Deceased Don O. Mohr, Sr., had been engaged in the mortuary business in Ponca, Nebraska, for 49 years, was 70 years of age, and was killed instantly in an auto-

mobile accident on August 18, 1962. He left surviving him as his heirs, Lura B. Mohr, his widow, and his children by a previous marriage, Donna Jane Mohr DeLong, daughter and plaintiff in this action, and Don O. Mohr, Jr., son and defendant in this action. Don O. Mohr, Sr., died intestate and hence the widow would inherit one-fourth interest and the son and daughter each a three-eighths interest in his estate.

The evidence shows that the deceased Don O. Mohr, Sr., was 70 years of age and in failing health. On July 13, 1962, he went to F. B. Hurley's office in Ponca and caused him to draft the deed and bill of sale in question to the mortuary, the real estate, and the personal property used in connection therewith. The father, Don O. Mohr, Sr., executed and acknowledged both instruments, went back to the mortuary, and sent his wife to Hurley's office where she also acknowledged and signed the deed. Hurley completed the instruments, placed them in an envelope, and handed them to Mrs. Mohr. Mrs. Mohr, who stands to lose one-fourth interest in the property involved here, was the chief witness for the defendant. She testified that she handed the envelope and the instruments to her husband, Don O. Mohr, Sr.; that he looked the instruments over and handed them back to her; that he told her to keep them until Don, Jr., comes back; and that he said, "give it to Don, Jr., when he comes." This took place on the same day the deed and bill of sale were executed. She took the deed and kept possession of it in her personal dresser drawer of the bedroom of their home. She testified that Don O. Mohr, Sr., told her that under no conditions was the envelope to be returned to him. She testified that she felt she was under an obligation with instructions to deliver the instruments to Don O. Mohr, Jr. On the envelope containing the instruments were the words "For Don O. Mohr Jr" which the undisputed evidence shows was in the handwriting of Don O. Mohr, Sr. She had continual possession of these instruments and

there was no evidence that her husband ever knew where she put them or knew that they were in her personal dresser drawer. She delivered the deed and bill of sale to Don O. Mohr, Jr., the defendant, shortly after he returned from California for the funeral.

Before reviewing the circumstances further we point out that whether a deed is delivered or not ordinarily depends on the intention of the grantor, determinable from the circumstances of the case. Short v. Kleppinger, 163 Neb. 729, 81 N. W. 2d 182; Smith v. Black, 143 Neb. 244, 9 N. W. 2d 193; Dowding v. Dowding, 152 Neb. 61, 40 N. W. 2d 245. And, no particular acts or words are necessary to constitute delivery, but anything done by the grantor, by words or acts from which it is apparent that delivery was intended and that the instrument passed beyond his dominion, control, or authority is sufficient. Dowding v. Dowding, *supra;* Black v. Romig, 151 Neb. 61, 36 N. W. 2d 772; Colbert v. Miller, 149 Neb. 749, 32 N. W. 2d 500; Phillips v. Vandemoer, 152 Neb. 145, 40 N. W. 2d 645.

Besides the testimony of the widow, which was directly against her own interest, there are ample supporting testimony and circumstances that point unequivocally to the deceased's intention to accomplish an irrevocable delivery of the deed and bill of sale. The fact that he gave them to his wife, one of the cograntors of the deed for delivery, is no impediment. Blochowitz v. Blochowitz, 122 Neb. 385, 240 N. W. 586, 82 A. L. R. 949; Haas v. Wellner, 90 Neb. 160, 133 N. W. 185; Milligan v. Milligan, 161 Neb. 499, 74 N. W. 2d 74. The same authorities demonstrate the proposition that it is not necessary that the grantor deliver the deed to the grantee personally, it is sufficient if it is delivered to a third person unconditionally for the use of the grantee.

The son, Don O. Mohr, Jr., was living in California and was employed as an officer in a bank. He was a licensed mortician and prior to 1953 had been engaged

in the mortuary business with his father. Although the dead man's statute, section 25-1202, R. R. S. 1943, barred direct testimony as to conversations or communications with the father, the evidence is ample to show that in 1962, especially in June when the son returned for his biennial visit, arrangements were made between them for the son to return to Ponca and take over the business. The son advertised his house in California for sale in July 1962, and he was in the process of closing out his affairs in California at the time of his father's death in the automobile accident. In evidence is an advertisement in the Los Angeles Times of July 28, 1962, advertising the home of Don O. Mohr, Jr., for sale. His home was actually sold in September and the deal closed in October. Again the widow, testifying against her own interests, stated that Don O. Mohr, Sr., told her of the arrangement and Don, Jr., was to return to Ponca, run the business, furnish them an apartment in the mortuary, and employ the father in the business. She testified that they talked many times of the arrangements for Don to leave California and return to Ponca; that they were looking for him home at any time; that when the son left to go back home after the visit Don O. Mohr, Sr., told her that he was going to return; that he was going back (to California) to make arrangements and would come back and be given the property; and that the arrangements were not to sell the property to Don O. Mohr, Jr., but to give it to him. On July 21, 1962, almost a month before his death, and a week after the execution of the deed and the bill of sale, the father changed the business bank account to put it in his son's and his name. Two days before he died, on August 16, 1962, his new stationery was printed with his son's name on it and he told the printer that his son was coming back.

Very significant we think is the testimony of an independent witness, a South Sioux City mortician, who

was a longtime friend of the deceased. He testified as follows: "A Well, I had a church truck of Mr. Mohr's and he stopped to get it, and he came in and sat down and started talking and I asked how the family was, mentioned the names of Don, Jr., and Lura and so on, and he said Don, Jr., had just been there and went back to California and he was coming back to take over the business because his health was getting bad. Q Don O. Mohr, Sr.'s health was getting bad? A Yes, and he made the statement that he had the papers fixed up and left with her and he was just going to kind of retire. * * * Q During this conversation Mr. Mohr made no statement to you as to what arrangement he had made with his son other than he was coming back to take over the business? A He gave it to him. He said 'if somebody gave me that opportunity when I was a boy.'"

E. J. McCarthy, an attorney, also testified that the deceased told him he expected Don, Jr., to come back from California and he was going to turn the mortuary over to him. The deceased also told attorney Hurley, who prepared the instruments, that Don, Jr., was coming back and take over the business.

It is true that the deceased kept operating the property and business after execution and delivery of the deeds to his wife. Plaintiff stresses this fact in argument. But, these facts are not controlling and not inconsistent with an intent to make an unconditional delivery of the deeds. Many of our cases have held valid a deed to be delivered and recorded on the death of the grantor and the retention of control of the premises, collecting rents, and paying taxes, insurance, and repairs has been held not inconsistent with delivery. Cerveny v. Cerveny, 154 Neb. 1, 46 N. W. 2d 632; Dowding v. Dowding, *supra;* Kellner v. Whaley, 148 Neb. 259, 27 N. W. 2d 183. In this case such a holding would require that the deceased close down the business until his son same back from clearing up his affairs in Cal-

ifornia. Besides, the agreement was that Don, Sr., and his wife were to live in an apartment over the mortuary and he was to remain as an employee in the business. We fail to see where these acts negatived an intention to deliver the deeds or render them invalid. There is no merit to this contention.

It is argued by the plaintiff that the widow's testimony was impeached by certain contradictory statements made by her in letters to the plaintiff. It is true that there are ambiguous and uncertain statements in these letters that relate to the whole situation existing in the family. A construction could be put on them impeaching Lura B. Mohr's testimony. But, her direct testimony is clear, positive, unequivocal, made against her own financial interest, and is amply corroborated by other independent witnesses' testimony and by undisputed circumstances in the case. We feel, as the trial court did, that her testimony as to the unconditional delivery of these deeds was not impeached and spoke the truth under the circumstances. The trial court did not consider the statements made in these letters as impeaching her clear, direct, and definite testimony as to delivery. This will be given great weight by this court where it is required to review and pass on the weight of the evidence.

The evidence also shows that the deceased had made ample provisions for the daughter in the form of life insurance, a $10,000 joint savings account, and he had contributed to the purchase of the daughter's California home. We point out that the widow's testimony as to the intention of the deceased to accomplish an unconditional delivery of these deeds is strongly supported by all the circumstances and the testimony of the independent witnesses. To overturn the strong persuasiveness of all these circumstances and the positive, direct testimony as to unconditional delivery, we would have to rely on a strained analysis of the uncertain meaning of letters written by Lura B. Mohr; when we feel that an

examination of the whole context of the letters support her other testimony and is consistent with testimony as to an intention that the deeds were delivered unconditionally.

There are other circumstances supporting the conclusion herein reached. The deceased, an experienced businessman, died intestate. He had made no will. The turning over of the business to his son, the execution of the deed and bill of sale, his acts in providing for his daughter and widow otherwise, are consistent with his intestacy. Although the dead man's statute bars the conversations between the son and father, the record shows that they did have many conversations in the months of June and July about the subject of the son returning to take over the business. After returning to California from the June and July visit, Don O. Mohr, Jr., told the plaintiff that he was selling out in California and going back to Ponca to run the business. There is evidence that the plaintiff, Donna DeLong, knew about the deed and bill of sale on the day after the father's death and witnessed the delivery by Lura B. Mohr, the widow, of the envelope containing the deed and bill of sale. The evidence is that the plaintiff and her husband stayed in Ponca for some time, helped in running the business, billed Don O. Mohr, Jr., for their services, which he paid in the sums of $148.42 and $500.

A further analysis of the testimony is unnecessary. We come to the same conclusion as the trial court that Don O. Mohr, Sr., intended to convey this property absolutely to the defendant; and that he executed and delivered the deed and bill of sale unconditionally with an intention that they be irrevocable. The judgment of the trial court is correct and is affirmed.

AFFIRMED.